**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DEDRA DE LA ROSA,

*Plaintiff*,

*-against-*

597 BROADWAY DEVELOPMENT CORP,

*Defendant.*

**Docket No. 13-CIV-7999 (LAK) (MHD)**

---

**DEFENDANT 597 BROADWAY DEVELOPMENT CORP'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

**SCHLAM STONE & DOLAN LLP**
**Richard H. Dolan**
**Elizabeth Wolstein**
**26 Broadway – Suite 1900**
**New York, New York 10004**
**Telephone:  (212) 344-5400**
**Facsimile:   (212) 344-7677**
**E-Mail: rhd@schlamstone.com**
**E-Mail: ewolstein@schlamstone.com**

*Attorneys for Defendant 597 BROADWAY DEVELOPMENT CORP.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

A.      The 19th Century Origins And Landmark Status Of 597 Broadway ................................. 3

B.      Physical Characteristics Of The Store Entrance ................................. 3

C.      The Permits And Approvals Necessary To Build A
Wheelchair Ramp Or Lift ................................. 4

D.      DOB's Denial Of The Landlord's Application For Approval
Of A Permanent Wheelchair Ramp ................................. 7

E.      The 2012 ADA Lawsuit Against The Landlord And Its Installation
Of A Portable Wheelchair Ramp ................................. 8

F.      The Complaint In This Action And Procedural History ................................. 9

ARGUMENT ................................................................................................................ 11

I.      DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER
OF LAW DISMISSING THE AMENDED COMPLAINT ................................. 11

    A.      Summary Judgment Standard ................................. 11

    B.      Plaintiff Cannot Establish That The Landlord's Use Of
A Portable Wheelchair Ramp, Rather Than A Permanent
Ramp Or A Lift, Violates The ADA ................................. 11

        1.      Legal Framework And Standards ................................. 12

            a.      Statute And Regulations ................................. 12

            b.      Burden-Shifting Framework ................................. 15

        2.      Plaintiffs' Proposals For Barrier Removal Are Not
Readily Achievable ................................. 16

            a.      Plaintiff Has Failed To Articulate A Plausible
Wheelchair Ramp Proposal ................................. 16

          b.      The Landlord Has Met Its Burden Of Persuasion
By Showing That Plaintiff's Proposed Wheelchair
Ramp Is Highly Unlikely To Be Approved By
DOB Or LPC ................................................................................19

          c.      Plaintiff Has Not Proffered A Plausible Wheelchair Lift, And In
Any Event The Landlord Has Shown That It Is Not Readily
Achievable ....................................................................................23

          d.      The Landlord Has Shown That Plaintiff's Proposed Lift Is Not
Readily Achievable ......................................................................26

     3.     Because No Permanent Ramp Or Lift Is Readily Achievable Defendant's
Use Of A Portable Ramp To Provide Access To The Store Does Not
Constitute Discrimination Under the ADA...............................................27

   C.     Plaintiff Has Not Made Out A Prima Facie Case Of Discrimination Under The
New York State And City Disability Statutes, Or If She Has, The Landlord Has
Rebutted It..........................................................................................................27

CONCLUSION....................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Adorno v. Port Authority of New York and New Jersey*,
    685 F. Supp. 2d 507 (S.D.N.Y. 2010)............................................................29

*Borkowski v. Valley Central School District*,
    63 F.3d 131 (2d Cir. 1995)........................................................................15

*Brown v. County of Nassau*,
    736 F. Supp. 2d 602 (E.D.N.Y. 2010) ..........................................................16

*Colorado Cross Disability Coalition v. Hermanson Family Ltd*,
    264 F.3d 999 (10th Cir. 2001) .............................................................18, 24

*Gathright-Dietrich v. Atlanta Landmarks, Inc.*,
    452 F.3d 1269 (11th Cir. 2006) .............................................13, 14, 19, 25

*Kemp v. Metro-North Rail Road*,
    316 F. App'x 25 (2d Cir. 2009)..................................................................28

*Knoeffler v. Town of Mamakating*,
    126 F. Supp. 2d 305 (S.D.N.Y. 2000)..........................................................29

*Kreisler v. Second Avenue Diner Corp.*,
    No. 10 Civ. 7592, 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012),
    *aff'd*, 784 F.3d 184 (2d Cir. 2013) .......................................................15, 23

*Mihalik v. Credit Agricole Cheuvreux North America, Inc.*,
    715 F.3d 102 (2d Cir. 2013)......................................................................28

*Norkunas v. Seahorse NB LLC*,
    444 Fed.Appx. 412 (11th Cir. 2011).........................................................13

*Panzica v. Mas-Maz, Inc.*,
    2007 WL 1732123 (E.D.N.Y. June 11, 2007) ..............................................13

*Pascuitti v. New York Yankees*,
    87 F. Supp.2d 221 (S.D.N.Y. 1999)...........................................................16

*Rivera v. Rochester Genesee Regional Transportation Authority*,
    743 F.3d 11 (2d Cir. 2014).......................................................................11

*Roberts v. Royal Atlantic Corp.*,
    542 F.3d 363 (2d Cir. 2008).......................................................... *passim*

*Santiago v. Coco Nail*,
    10 Civ. 3373, 2012 WL 1117961 (E.D.N.Y Mar. 16, 2012) ..........................8-9

*Sotomayor v. City of New York*,
    862 F. Supp. 2d 226 (E.D.N.Y. 2012)
    *aff'd*, 713 F.3d 163 (2d Cir. 2013) ..................................................................28

*Speciner v. Nationsbank, N.A.*,
    215 F. Supp.2d 622 (D. Md. 2002) ....................................................14, 19, 25

*Tjeknavorian v. Mardirossian*,
    No. 14-CV-5723, 2014 WL 5365994 (S.D.N.Y. Oct. 22, 2014).......................11

*Vinokur v. Sovereign Bank*,
    701 F. Supp. 2d 276 (E.D.N.Y. 2010) ...........................................................28

*Whethers v. Nassau Healthcare Corp.*,
    No. 13 Civ. 2991, 2014 WL 4637215 (2d Cir. Sept. 18, 2014).......................11

*Yates v. Sweet Potato Enterprise, Inc.*,
    2014 WL 5588555 (N.D.Cal. Nov. 3, 2014) ..............................................16, 27

*Young v. Kali Hospitality Ltd.*,
    2010 WL 3037017 (S.D. Ohio Aug. 2, 2010)..................................................15

## STATUTES, RULES AND OTHER AUTHORITIES

42 U.S.C. § 1985.......................................................................................................9

42 U.S.C. § 12181(9) .............................................................................................13

42 U.S.C. § 12182(a) ........................................................................................12, 13

42 U.S.C. § 12182(b)(2)(A)(iv) ........................................................................13, 27

42 U.S.C. § 12182(b)(2)(A)(v) ...............................................................................13

42 U.S.C. § 12183(a) ..............................................................................................13

28 C.F.R. § 36.304(a)..............................................................................................14

28 C.F.R. § 36.304(d)(3)...................................................................................14, 20

28 C.F.R. § 36.304(e)..............................................................................................15

28 C.F.R. § 36.305(a).........................................................................................14, 26

28 C.F.R. § 36.405(a)..............................................................................................14

New York Executive Law, Article 15 §290.............................................................27

New York City Administrative Code 8-107(1)(a) ...................................................................27

New York City Administrative Code 27-292.5 ......................................................................17

New York City Administrative Code 27-375(f) ......................................................................17

New York City Administrative Code 27-377(b) .....................................................................17

New York City Administrative Code 27-377(c)(3) .............................................................7, 17

Federal Rule of Civil Procedure 56(a) ....................................................................................1

Local Civil Rule 56.1 ...........................................................................................................1, 3

U.S. Department of Justice, ADA Title III Technical Assistance Manual III-4.4.200.................14

National Fire Protection Association 14 sec.6.4.5.1 and 6.4.5.1.1 ..................................7

Defendant 597 Broadway Development Corp. (the "Landlord" or "Defendant") submits this memorandum of law in support of its motion for summary judgment dismissing Plaintiff's remaining claims in this action, pursuant to Federal Rule of Civil Procedure 56(a) and Local Civil Rule 56.1.

## PRELIMINARY STATEMENT

In 2012, Defendant installed a portable wheelchair ramp to provide access into the ground floor condominium unit it owns at 597 Broadway in Manhattan, a building that was built in 1867 and lies within the Soho Cast-Iron Historic District.  After being sued in this case—the second ADA lawsuit against it in less than two years brought by a plaintiff's ADA mill—the Landlord applied to the New York City Department of Buildings for a permit to build a permanent wheelchair ramp, the relief Plaintiff was demanding.  The Landlord's ramp design came as close as possible to meeting ADA design standards, which was difficult because of the narrow storefront.

The Department of Buildings rejected the Landlord's application, explaining that the ramp violated the New York City Building Code because it extended more than 44 inches out from the storefront.  In fact, the ramp extended more than halfway to the street in order to comply with the ADA's slope requirements for a ramp that would have to rise a daunting 16 inches from the sidewalk.  Two months before submitting its permit request to the Department of Buildings, the Landlord submitted its proposed ramp to the Landmarks Preservation Commission, which would have to approve any construction, and requested to meet with the Commission staff to seek guidance on the landmarks issues surrounding construction of a permanent ramp.  The staff declined the meeting request because the ramp had no prospects before the Commission.

Since the Landlord filed its Answer to Plaintiff's original complaint in January 2014, Plaintiff has been on notice that the Landlord's central defense to her ramp demand is that an ADA-compliant ramp would not be approved by the permitting agencies in light of the physical constraints of the available space and the landmarks issues.  Instead of investigating those issues or attempting to respond to the Landlord's position with evidence, Plaintiff retained as her expert an unlicensed architect who is unqualified to offer any opinion on the likelihood of the necessary permits being granted and consequently has not offered any opinion on the subject.

Instead of offering relevant evidence to address the permitting issues, Plaintiff proposed a ramp that has no handrails, in violation of the Building Code and the ADA; a slope steeper than allowed by the Building Code and the ADA; that would destroy the configuration of the 19th century storefront; and that encroaches onto the neighboring property's storefront space and would require the neighboring owner to also seek permits—for a ramp that violates safety requirements of the governing laws.  As explained by the Landlord's expert, a registered architect with expertise in landmarks issues, the ramp has no chance of being approved by the permitting agencies.  Plaintiff's "conceptual" proposal for a wheelchair lift is also unlikely to be approved by the Landmarks Commission because it, too, would require a dramatic alteration of the historically significant storefront configuration, while also being too unfinished, lacking in detail, and subject to change to constitute a plausible proposal to begin with.

Proposals for barrier removal that have little or no chance of being approved by the Buildings Department or Landmarks Preservation Commission are not "readily achievable," the legal standard under the ADA for barrier removal in a pre-ADA building.  The Landlord is therefore not committing discrimination in failing to undertake them.  The Landlord has met its obligation to come up a means of barrier removal that *is* readily achievable by making available

2

a portable ramp by which wheelchair users can enter the ground floor store.  The undisputed facts make clear that the Landlord is entitled to judgment as a matter of law dismissing Plaintiff complaint.

## STATEMENT OF FACTS

**A.    The 19th Century Origins And Landmark Status Of 597 Broadway**

The building located at 597 Broadway, New York, New York (the "Building") was completed in 1867.  Defendant's Local Rule 56.1 Statement ("Def. 56.1") ¶ 1.  It was designed by architect John Kellum (1807 – 1871), who designed a number of nearby buildings, including 565-567 Broadway, 502-504 Broadway, 18 Mercer Street, and 170 Mercer Street.  Declaration of Tom van den Bout ("Van den Bout Decl."), Exh. B at 49-50, 180.  In its August 14, 1973 report designating the Soho-Cast Iron Historic District, the New York City Landmarks Preservation Commission (the "LPC" or the "Commission") called one of Kellum's nearby buildings "one of the best examples of Italianate architecture within the District." *Id.* at 180.

The Building is within the SoHo-Cast Iron Historic District, an area bounded by West Broadway to the West, Houston Street to the north, Crosby Street to the east, and Canal and Howard Streets to the South.  Van den Bout Decl. ¶ 8, and Exh. B.  In its designation report, the Commission found that "the Soho Cast Iron Historic District contains buildings and other improvements which have a special character and special historic and aesthetic interest and value and which represent one or more periods or styles of architecture typical of one or more eras in the history of New York City and which cause this area, by reason of these factors, to constitute a distinct section of the City." *Id.* at 177.

**B.    Physical Characteristics Of The Store Entrance**

A Billabong store, operated by former co-defendant GSM (Retail), Inc., currently occupies the ground floor commercial space at 597 Broadway under a lease with the Landlord.

Defendant's Answer to Amended Complaint ¶ 8 (Wolstein Decl., Exh. 6).  It is undisputed that the entry door to the Billabong store is approximately 15.5 to 16 inches higher than the adjoining sidewalk.  Def. 56.1 Stmt. ¶ 4.  There are two steps of approximately 8 inches each.  *Id.*.  The store's door is set back from the face of the building approximately 7 feet.  Van den Bout Decl. ¶ 9.  Photographs depicting the steps and entry to the store are attached as Exhibit C to the accompanying Declaration of Defendant's expert architect, Tom van den Bout.

C.   **The Permits And Approvals Necessary To Build A Wheelchair Ramp Or Lift**

The New York City Department of Buildings ("DOB") reviews all proposed construction in the City for compliance with the New York City Building Code, Fire Code, DOT rules, and the ADA.  Def. 56.1 ¶ 11.  Installation of a wheelchair ramp or wheelchair lift at 597 Broadway would require a permit from DOB and would have to comply with the Building Code, the rules of the Fire Department, the Department of Transportation (if the project involves encroachment onto the public sidewalk), as well as the LPC.  Def. 56.1 ¶ 12.  The LPC must approve any alteration to the storefront façade, steps, and landing, including any wheelchair ramp or lift, because the Building is within a landmarked district.  Def. 56.1 ¶ 13.

To apply for a permit for a project requiring LPC approval, the applicant must first submit an application to DOB for a permit, along with an architectural drawing of the proposed construction.  *Id.* ¶ 14.  DOB can either issue an approval or raise objections to aspects of the proposed project that do not comply with the Building Code, the Fire Code or the disability laws. *Id.*  If DOB has objections to the design, it issues a Notice of Objections (also known as an objection sheet) to the applicant.  *Id.* ¶ 15.  DOB may, but more often does not, include all of its objections in its first objection sheet.  Van den Bout Decl. ¶ 11.  If the objections can be addressed, the applicant may revise its architectural drawings to address the objection, and submit the revised project to DOB.  Def. 56.1 ¶. 16.  If DOB has additional objections, it issues

4

another objection sheet.  *Id.*  This process continues until the applicant has addressed all of DOB's objections.  *Id.* ¶17.  Once DOB has no more objections, it issues a clean objection sheet. *Id.*

For small projects such as the installation of a ramp or lift, LPC will not consider the project until DOB has issued a clean objection sheet for the project (with the exception of the objection associated with not having obtained a Landmark Permit).  Def. 56.1 ¶ 12.  In more complex projects, such as new buildings, LPC will consider a proposal with an objection sheet that is cleared of only zoning objections.  Van Den Bout Decl. ¶ 12.  Once the applicant submits the clean objection sheet to LPC, the project is examined by a staff level reviewer.  Def. 56.1 ¶ 19.  If the project involves only minor changes that do not affect the historically significant aspects of the property, the project may be approved at the LPC staff level, without the need for a public hearing.  *Id.*  If the project would affect the property's historically significant elements, the project must go to an LPC public hearing.  *Id.* ¶ 20.  An application to install a wheelchair ramp or lift at 597 Broadway would have to go to a full LPC public hearing process because a ramp or lift would dramatically affect the historically significant configuration of the entry and façade of the ground floor commercial space, as well as, potentially, historically significant building materials that may or may not exist beneath the steps into the store.  *Id.* ¶ 21.

The LPC approval process associated with a full hearing consists of staff level review, a community board hearing, and finally a hearing before the LPC itself.  *Id.* ¶ 22.  Initially, the applicant reviews its design with the LPC staff until the assigned staff member believes the design satisfactorily meets the requirements for presentation before the public and the Commission.  *Id.*  The applicant must then appear for a public hearing before the New York City Community Board for the area in which the project is located.  *Id.* ¶ 23.  At that point, the

Community Board can either approve or reject the project. *Id.* The Community Board's determination is purely advisory to the Commission, but in practice carries significant weight with the commissioners' review of the proposal. *Id.* The applicant must then present its proposal at a public hearing before the Commissioners of the LPC, at which members of the public can also speak. Id. ¶ 24. The Community Board's statement is read into the record along with any other city preservation groups, local community groups and/or individuals. *Id.* ¶ 25. The LPC Commissioners review the proposal to determine its effect on the historically significant features of the property, and, for buildings that are within historic districts, its effect on nearby designated properties and/or the character of the district in general. *Id.* ¶ 26. The Commissioners then vote on the proposal and either approve, request specific alterations (to be presented again in a subsequent Public Meeting, or worked out with preservation staff), or reject the project. *Id.* ¶ 27.

The Commission does not normally approve dramatic alterations of historically significant features of landmarked properties that are not appropriate to the character of the building and/or the district. Def. 56.1 ¶ 28. When applications proposing dramatic alterations of historic features are submitted, there is often significant push back at the staff level, and staff instruct the applicant to revise design so as not to significantly alter the historic features of the property. *Id.* The LPC will not approve a historically inappropriate project. *Id.*

DOT has jurisdiction over the public sidewalks in the City. Van den bout Decl. ¶ 15. A project that encroaches onto the public sidewalk beyond the street line (*i.e.,* the property line) must be approved by DOT by issuance of a revocable consent. *Id.* Under the Building Code, however, a wheelchair ramp may extend up to 44 inches beyond the property line without the owner's having to obtain a revocable consent from DOT. *Id.* Beyond that distance, a revocable

consent is required.  Under DOT rules, the grant of a revocable consent is conditioned on, among other things, the structure's being removable upon instruction from DOT.  As the name suggests, the consent is revocable by DOT at any time.  *Id.*  A revocable consent is also subject to Community Board (and public) review, which again is limited to an advisory statement.  *Id.*

**D.**   **DOB's Denial Of The Landlord's Application For Approval Of A Permanent Wheelchair Ramp**

In July 2014, the Landlord applied for a permit to build a wheelchair ramp leading into the Billabong store.  Def. 56.1 ¶ 29.  The application included a design for a ramp by Mr. van den Bout, which he made as close to ADA-compliant as possible given the space constraints imposed by the narrow storefront.  *Id.* ¶ 29; van den Bout Decl. ¶ 16.  A copy of the ramp design submitted with the DOB application is attached to the van den Bout Declaration as Exhibit D.

Mr. van den Bout's ramp design uses the steepest slope allowable for a ramp under the ADA for steps of this height, namely, 1:10.[1]  Van den Bout Decl. ¶ 17.  That means there must be ten inches of ramp run for every one inch of rise of the steps above the ground.  *Id.*  Here, because the steps rise nearly 16 inches, the steepest ramp allowable under the ADA would have to be 160 inches long to comply with the 1:10 slope requirement.  *Id.*  A switchback ramp is therefore necessary.  *Id.*  To comply with the ADA design standards and the Building Code, the ramp has a landing at every change in direction.  (*See* 405.7.4 of the ADA 2010 Design Standards and New York City Admin. Code 27-377(c)(3).)  Van den Bout Decl. ¶ 17.

There is a standpipe in front of the store window.  Def. 56. 1 ¶ 33.  Access to the standpipe cannot be blocked (see Building Code BC 905.3.3.3 referencing NFPA (National Fire Protection Association) 14 sec.6.4.5.1 and6.4.5.1.1), and as a result the ramp must begin far

---

[1] Table 405.2 of the ADA 2010 Design Standards allows an existing building to have a ramp with a slope steeper than 1:12 but not steeper than 1:10 for steps that are higher than 6 inches from the ground.  Van den Bout Decl. ¶ 17.

enough beyond the property line (which coincides with the front window of the store) to clear the standpipe.  Van den Bout Decl. ¶ 18.

On August 6, 2014, DOB issued a Notice of Objections (*i.e.,* an objection sheet), a copy of which is attached as Exhibit E to the van den Bout Declaration.  Def. 56.1 ¶ 30.  DOB objected to the ramp because it extends out onto the sidewalk more than 44 inches, in violation of the 44-inch limit in the Building Code.  Def. 56.1 ¶ 31.  This is an objection that cannot be cured with a redesign because of the height of the steps and slope rules in the Building Code and the ADA, as it is not possible to design an ADA-compliant ramp that extends no more than 44 inches from the property line.  Van den bout Decl. ¶ 19.  For this reason, the Landlord did not submit a proposed redesign of the ramp to DOB.[2]

The Landlord's proposed ramp also partially covered a manhole, impeding use of this manhole.  Def. 56.1 ¶ 32; Van den Bout Decl. ¶ 21.  Given the space constraints and the required design criteria for any ramp, it was not possible to redesign the ramp to avoid covering the manhole.  *Id.*

**E.**    **The 2012 ADA Lawsuit Against The Landlord And Its Installation Of A Portable Wheelchair Ramp**

In 2012, Defendant was sued in this Court on an identical claim under the ADA by a plaintiff who alleged that he was a wheelchair user and could not gain access to the Billabong store, allegedly in violation of the ADA and analogous New York State and New York City laws and rules.  *See Zoltan Hirsch v. Billabong USA Holding Pty Ltd.*, No. 12 Civ. 0868 (ALC) ("the *Hirsch* Action"); Wolstein Decl. ¶ 2.  Plaintiff's counsel in the *Hirsch* Action was the Weitz Law

---

[2] DOB raised a second objection to the Landlord's ramp -- that it lacks compliant handrails (specifically, extend handrails at each switchback).  *See* Van den Bout Decl., ¶ 20, and Exh. E.  This is a curable objection and the ramp could be redesigned to add ADA-compliant handrails.  But adding handrail extensions would cause the ramp to extend even further onto the sidewalk beyond the 44 inch line, exacerbating DOB's main objection.  Van den Bout Decl. ¶ 20.

Firm, P.A., *id.*, a high-volume ADA plaintiff's firm well known in this Court.  See *Santiago v. Coco Nail*, 10 Civ. 3373 (ILG) (MDG), 2012 WL 1117961, at *8 n.1 (E.D.N.Y Mar. 16, 2012) (Weitz Firm filed 180 ADA lawsuits in Southern and Eastern Districts between 2009 and early 2012; 151 filed in Southern District of which Hirsch was plaintiff in 125).  The *Hirsch* Action was settled between the plaintiff and the Landlord (but not co-defendant Billabong) before discovery, and Judge Andrew Carter dismissed the action with prejudice as to 597 Broadway in an order dated on July 5, 2012.  Wolstein Decl. ¶ 3, and Exh. 1.

As part of the settlement of the *Hirsch* Action, the Landlord installed a portable wheelchair ramp to provide wheelchair access to the Billabong store. Def. 56.1 ¶ 5.  In the store window is a sign with the international symbol of accessibility alerting the public that the store is wheelchair accessible.   Def. 56.1 ¶ 6.  The sign says "ring bell for assistance."  *Id.*  The bell is mounted so that it can be reached by a person in a wheelchair, and rings loudly inside the store to alert store personnel that it is necessary to set up the portable ramp.  Def. 56.1 ¶¶ 7-8.  A store employee is available to assist the wheelchair user in using the ramp to enter and exit the store. *Id.* ¶ 9.  Through this system, a wheelchair user can enter the store.

Plaintiff has never tried to enter the store by using the portable ramp.  Def. 56.1 ¶10.

**F.**    **The Complaint In This Action And Procedural History**

Plaintiff commenced this action by complaint dated Nov. 8, 2013.   The original complaint alleged that the Landlord and Billabong discriminated against Plaintiff on account of her disability by denying her access to the store and by allegedly failing to comply with a three-page single spaced list of claimed violations of ADA technical design standards relating to the interior of the store.  Wolstein Decl., Exh. 3.  The complaint asserted causes of action for civil rights conspiracy under 42 U.S.C. § 1985, violation of the ADA, the New York State Executive Law, the New York State and City Human Rights laws, and common law negligence, and sought

declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs.  *Id.*  As in the *Hirsch* Action, Plaintiff's counsel here, Parker Hanski LLC, is a high-volume plaintiff's ADA litigation firm, having filed 128 ADA cases in the Southern and Eastern Districts of New York since 2011, using a small number of repeat plaintiffs such as plaintiff Dedra de La Rosa and her mother Joyce de la Rosa.  *See* Wolstein Decl. ¶ 5 and Exh. 2; Deposition Transcript of Plaintiff Dedra de La Rosa ("De la Rosa Tr.") 75 (Wolstein Decl., Exh. 8).  The complaint is a boiler plate complaint that Parker Hanksi has used with little or no variation (other than the name of the defendant) in dozens of cases.  Wolstein Decl. ¶ 5.

With its Answer, the Landlord asserted a single counterclaim seeking a declaratory judgment that its use of a portable ramp to provide wheelchair access to the Billabong store satisfies its obligations to provide such access under the ADA and analogous New York State and New York City statutes.  Wolstein Decl. ¶ 6.

Within a few months, Plaintiff and co-defendant Billabong began settlement negotiations. Wolstein Decl. ¶ 7.  This Court so-ordered those parties' stipulation of voluntary dismissal on June 2, 2014 under a "confidential" settlement agreement.  *See* Docket Entry no. 27.

In April 2014, the day the Landlord took Plaintiff's deposition, plaintiff's counsel announced her intention to withdraw all of her claims against the Landlord other than the claims under the ADA and analogous New York State and City statutes relating to wheelchair access into the store from the outside; all her claims relating to the interior of the store; and all her claims for compensatory and punitive damages.  Wolstein Decl. ¶ 8.  Plaintiff and the Landlord entered into a stipulation agreeing to the dismissal with prejudice of the foregoing claims, and on June 4, 2014, this Court so-ordered the stipulation.  *Id.*, and Exh.4.  The sole remaining causes of

action against the Landlord as of June 4, 2014, accordingly, were Plaintiff's claims for injunctive relief relating to wheelchair access into the store.  *Id.* ¶ 8.

On July 14, 2014, Plaintiff filed her amended complaint asserting her sole remaining claim, for disability discrimination under the ADA, New York State, and New York City statutes for the Landlord's alleged failure to provide wheelchair access to the store as required under those statutes.  Wolstein Decl., ¶ 9, and Exh. 5.  In its Answer the Landlord reasserted its declaratory judgment counterclaim.  *Id*. ¶ 9, and Exh. 6.

## ARGUMENT

## I.   DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW DISMISSING THE AMENDED COMPLAINT.

### A.   Summary Judgment Standard

"Summary judgment is appropriate [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Tjeknavorian v. Mardirossian*, No. 14-CV-5723 SAS, 2014 WL 5365994, at *1 (S.D.N.Y. Oct. 22, 2014) (internal quotation marks omitted) (citing *Whethers v. Nassau Healthcare Corp*., No. 13 Civ. 2991, 2014 WL 4637215, at *1 (2d Cir. Sept. 18, 2014).)  Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the [non-moving party] and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law."  *Id*.  (Internal quotation marks omitted) (*citing Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014).).

### B.   Plaintiff Cannot Establish That The Landlord's Use Of A Portable Wheelchair Ramp, Rather Than A Permanent Ramp Or A Lift, Violates The ADA

Plaintiff cannot prevail on her claim for injunctive relief under the ADA because the undisputed facts make apparent that neither Plaintiff's proposed wheelchair ramp nor her

proposed wheelchair lift is "readily achievable" within the meaning of the ADA.   Indeed,

Plaintiff has not met, and cannot meet, even her minimal initial burden of showing that her

proposed wheelchair ramp and lift are plausible solutions to provide access to the store.   Even if

she could be deemed to meet that burden, Defendant has shown that Plaintiff's proposed

installations are not readily achievable—indeed, that they are not achievable at all—because

there is no ADA-compliant ramp, and no wheelchair lift, that has been or can realistically be

approved by the City agencies whose approval is required to build these projects, including, at a

minimum, the DOB and LPC.   Plaintiff offers no contrary evidence as her proffered expert, an

unlicensed architect, is not qualified to offer an opinion on the prospects for obtaining the

necessary approvals of a ramp or lift, and consequently he has not offered any opinion on the

subject.   Because no permanent fixture is readily achievable, the Landlord has installed a

portable ramp, satisfying it obligations under the ADA and New York law to provide a

wheelchair-accessible entrance to the store.   It is therefore not engaging in disability

discrimination.   There are no material facts in dispute and the Court should grant summary

judgment dismissing the Amended Complaint in its entirety.

### 1.   Legal Framework And Standards

#### a.   Statute And Regulations

"Title III of the ADA prohibits discrimination against individuals   'on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation....'"   *Roberts v. Royal Atlantic Corp.*,

542 F.3d 363, 368 (2d Cir. 2008) (quoting 42 U.S.C. § 12182(a)).   To establish a violation of

Title III, the plaintiff must "establish that (1) he or she is disabled within the meaning of the

ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3)

that the defendants discriminated against the plaintiff within the meaning of the ADA."   *Id.*   The

only issue in this case is the third element—whether the Landlord discriminated against plaintiff under the ADA by providing wheelchair access to the Billabong store by means of a portable ramp, rather than a permanent ramp or wheelchair lift, as Plaintiff claims is required.

"The degree of accountability for architectural barriers depends on whether the place of public accommodation was newly constructed and first occupied after January 25, 1993, underwent renovations or alterations that affect usability after that date, or existed prior to that date." *Panzica v. Mas-Maz, Inc.*, 2007 WL 1732123, at *5 (E.D.N.Y. June 11, 2007) (citing 42 U.S.C. §§ 12182(b)(2)(A)(iv), (v); 12183(a)); *Gathright-Dietrich v. Atlanta Landmarks, Inc.,* 452 F.3d 1269, 1273 (11th Cir. 2006) ("The ADA imposes different requirements on the owners and operators of facilities that existed prior to its enactment date."). "Buildings that pre-existed the enactment of the ADA must meet the 'readily achievable' standard, and buildings constructed after the enactment of the ADA must meet the new construction or alterations standard." *Norkunas v. Seahorse NB LLC,* 444 Fed.Appx. 412, 415 (11th Cir. 2011) (citing 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(iv), 12183(a)); *see also Panzica*, 2007 WL 1732123, at *5 (for building that "existed prior to January 25, 1993, the ADA requires only that such facilities remove architectural and structural barriers if such removal is "readily achievable.") (citing 42 U.S.C. § 12182(b)(2)(A) (4) and  28 C.F.R. § 36.304(a)).  Thus, discrimination includes "a failure to remove architectural barriers . . .in existing facilities . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv); *see also Roberts*, 542 F.3d at 368-69 (same, quoting statute).

A barrier removal is "readily achievable," in turn, if it is "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  The "readily achievable" standard defines the extent of the facility's affirmative obligation:

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, *i.e.*, easily accomplishable and able to be carried out without much difficulty or expense."

28 C.F.R. § 36.304(a); *see also Speciner v. Nationsbank, N.A.*, 215 F. Supp.2d 622, 627 (D. Md. 2002) ("Under the ADA, the operator of an existing facility must remove 'architectural barriers … where such removal is readily achievable.'")

The "readily achievable" standard for barrier removal also applies to historic buildings. *See* U.S. Department of Justice, ADA Title III Technical Assistance Manual III-4.4.200 ("Does the ADA require barrier removal in historic buildings? Yes, if it is readily achievable."); *see also Speciner v. Nationsbank*, 215 F. Supp.2d at 629, 630 (relying on Manual for standard in case involving designated historic landmark). Buildings designated as historic under local law must "comply to the maximum extent feasible" with the applicable accessibility standards. 28 C.F.R. § 36.405(a); *see also Gathright-Dietriech*, 452 F.3d at 1273 ("The alterations to the historic building need only comply with the accessibility standards 'to the maximum extent feasible.'") (citing regulation).

To summarize, the owner of a landmarked building built before the ADA was enacted must, to the maximum extent feasible, remove architectural barriers where such removal is readily achievable, that is, "easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a).

At the same time, "[w]here a public accommodation can demonstrate that barrier removal is not readily achievable, the public accommodation shall not fail to make its . . . facilities . . . available through alternative methods, if those methods are readily achievable." 28 C.F.R. § 36.305(a); see also 28 C.F.R. § 36.304(d)(3) (if strict compliance with "the measures required to

14

remove a barrier would not be readily achievable, a public accommodation may take other readily achievable measures to remove the barrier that do not fully comply with the specified requirements"). Portable wheelchair ramps, for example, are expressly allowed and may "be used to comply with [the relevant accessibility requirements] only when installation of a permanent ramp is not readily achievable." 28 C.F.R. § 36.304(e).

### b.   Burden-Shifting Framework

The Second Circuit evaluates Title III claims under the burden shifting framework articulated for Rehabilitation Act claims in *Borkowski v. Valley Central School Dist.*, 63 F.3d 131 (2d Cir. 1995). *See Roberts*, 542 F.3d at 373. To meet her initial burden, a plaintiff must "articulate a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed the benefits.'" *Id.* (quoting *Borkowski*). While this standard is less stringent than that employed by other Circuits, "even the minimal burden of *Roberts* requires that a plaintiff must provide at least some estimate of costs." *Kreisler v. Second Ave. Diner Corp.*, No. 10 Civ. 7592 (RJS), 2012 WL 3961304, at *7 (S.D.N.Y. Sept. 11, 2012), *aff'd*, 784 F.3d 184 (2d Cir. 2013); *see also Young v. Kali Hospitality Ltd.*, 2010 WL 3037017, at *8 (S.D. Ohio Aug. 2, 2010) ("Under even the test from the Second Circuit, however, a Title III plaintiff needs to provide some cost estimate and a proposal for barrier removal.").

If the plaintiff makes her prima facie showing, "the defendant may counter the plaintiff's showing by meeting its own burden of persuasion and establishing that the costs of plaintiff's proposal would in fact exceed the benefits." *Roberts*, 542 F.3d at 373. The Circuit explained that "[b]ecause the concept of 'readily achievable' is a broad one, either party may include in its analysis, as costs or benefits, both monetary and non-monetary considerations." *Id.* at 373.

15

**2.      Plaintiffs' Proposals For Barrier Removal Are Not Readily
Achievable**

Plaintiff contends that the absence of a permanent wheelchair ramp or lift providing wheelchair access to the Billabong store violates the ADA, and has prepared drawings of a proposed wheelchair ramp and a proposed wheelchair lift.  Neither proposal is readily achievable because there is virtually no chance that either would be approved for construction by the Department of Building or the Landmarks Preservation Commission.

**a.      Plaintiff Has Failed To Articulate A Plausible Wheelchair
Ramp Proposal**

Plaintiff's proposed wheelchair ramp is not plausible and therefore fails to meet her initial, minimal burden of proof under the *Roberts* burden-shifting framework.  The ramp violates the ADA technical design standards and the Building Code and has no chance of being approved by either DOB or the LPC.

First, the ramp does not comply with ADA design standards or the Building Code in several material respects.  Although the technical design standards issued by the Department of Justice (codified in the CFR) apply only to new construction and alterations and not existing facilities such as 597 Broadway, they are widely considered by courts to "provide valuable guidance," in the usual case, "for determining whether an existing facility contains architectural barriers."  *Pascuitti v. New York Yankees*, 87 F. Supp.2d 221, 226 (S.D.N.Y. 1999) *see also, e.g., Brown v. County of Nassau*, 736 F. Supp. 2d 602, 617 (E.D.N.Y. 2010) (while ADAAG design standards are "not dispositive," "they can still provide guidance as to whether an existing facility is readily accessible and usable by individuals with disabilities").  The anomaly here is that substandard design features that are typically considered architectural barriers, *see, e.g. Yates v. Sweet Potato Enterprise, Inc.*, 2014 WL 5588555, at *3 (N.D.Cal. Nov. 3, 2014) (plaintiff claimed barriers to restaurant entry included "a lack of a level landing due to a steep slope/ramp

of 8% to 12.8%"), are part of the ramp that *Plaintiff is proposing*.  The presence of these features makes it highly likely, if not certain, that Plaintiff's ramp would be rejected by DOB.  The violations are:

- The ramp does not have handrails.  Def. 56.1¶ 42.  The 2010 Standards require handrails for any ramp with a rise of more than 6 inches.  2010 Standards 405.8.  As noted, the rise here is 15.5 to 16 inches.

- The slope of the ramp is too steep, at 13% or 1:7692.  Def. 56.1 43.  The steepest slope allowed by the 2010 Standards is 1:8, or 12.5%.  *See* 2010 Standards 405.2 ("A slope steeper than 1:8 is prohibited.").  For a rise of more than six inches, the maximum permissible slope is 1:10.  Van den Bout Decl. ¶ 23.

- The ramp does not have a landing at the top of the ramp.  Def. 56.1 ¶ 44.  This violates 405.7 of the 2010 Standards: "Ramps shall have landings at the top and the bottom of each ramp run."  As the "Advisory" to 405.7 explains, "[a] level landing is needed at the accessible door to permit maneuvering and simultaneously door operation."

Plaintiff's expert admitted at his deposition that the ramp he designed does not comply with the 2010 Standards.  Zuehl Tr. 45; Def. 56.1 ¶ 45.

These same features also violate the Building Code.  See Admin. Code 27-292.5, 27-375(f) (requiring handrails); 27-377(b) ("Ramps shall not have a slope steeper than 1 in 8"); Admin. Code 27-377(c)(3) ("Level platforms or landings . . . shall be provided at the bottom, at intermediate levels where required, and at the top of all ramps.").  The overly steep slope, absence of handrails, and absence of a landing are fundamental problems that make the ramp unsafe for a wheelchair user.  Van den Bout Decl. ¶ 24.  Plaintiff's revised ramp, submitted in her second expert report dated September 29, 2014, is identical to her original ramp except that it extends out 44 inches rather than 48 inches from the street line.  Def. 56.1 ¶ 48.  Thus, the revised design does nothing to cure the violations in the original ramp of the overly steep slope, absence of handrails, and absence of a landing.

Plaintiff has proffered no evidence even suggesting that her proposed ramp, with its material violations of the ADA design standards and the Building Code, has any chance of being approved by DOB, much less that it is likely to be approved. *Her expert witness proffers no opinion on the subject*—because he is not qualified to offer such an opinion. While an architect by training, Plaintiff's expert is not a registered architect and thus is not qualified to submit a permit application to DOB or to LPC and has never done so. Def. 56.1 ¶¶ 38-41. Accordingly, Plaintiff has not made a prima facie showing that her proposed ramp has any chance of being approved by DOB.

Plaintiff also has failed to make a prima facie showing that her proposed ramp has any chance of being approved by LPC. Her proposed ramp design requires removal of the steps leading up to the store entry. Def. 56.1 ¶ 49. This is a significant change to the storefront that would have to be reviewed and approved by LPC. Def. 56.1 ¶¶ 20-21. Again, *Plaintiff's expert offers no opinion on the likelihood the LPC would approve his proposed ramp* because he is not qualified to offer such an opinion: he has never submitted a project for approval to the LPC or appeared before the Commission as an architect of record. Def. 56.1 ¶¶ 40-41. Defendant's expert, registered architect, by contrast, specializes in projects involving New York City landmarks and has submitted at least 100 applications to LPC on behalf of clients seeking approval to alter landmarked properties, and advises clients on how the LPC is likely to respond to proposed alterations. Def. 56.1 ¶¶ 35-37.

Courts have recognized the significance of probable permitting problems in assessing whether a particular proposal for barrier removal is readily achievable, particularly where historic properties are at issue. In *Colorado Cross Disability Coalition v. Hermanson Family Ltd*, 264 F.3d 999 (10th Cir. 2001), the Tenth Circuit held that the plaintiff failed to meet his

initial burden of showing that a ramp to an historic building was readily achievable in part because plaintiff "failed to present any evidence to establish the likelihood that the City of Denver would approve a proposed modification to the historical building."  *Id.* at 1009.  In *Speciner v. Nationsbank, N.A.*, 215 F. Supp.2d 622 (D. Md. 2002), plaintiffs' demand for a wheelchair ramp to a landmarked bank building suffered from a similar failure of proof, since they offered "little, if anything, to demonstrate that the City of Baltimore would move a bus stop and trees and approve a constriction of the sidewalk less than a block from the City's historical central intersection at Baltimore and Charles Streets."  *Id.* at 633.  And in *Gathright-Dietrich v. Atlanta Landmarks, Inc*, 452 F.3d 1269 (11th Cir. 2006), the Eleventh Circuit held that the plaintiffs failed to meet their initial burden of showing that any of their three proposals for altering the existing wheelchair seating in a landmarked theater was readily achievable partly because plaintiffs "failed to provide expert testimony to assure the feasibility of their proposed seating modifications and did not, in any meaningful way, address [among other things]  the effect that those proposals would have on the historic features of the theater."  *Id*. at 1274-75.

Even Plaintiff's own expert admitted that "the ramp does not seem feasible."  Zuehl Tr. 78.

**b.      The Landlord Has Met Its Burden Of Persuasion By Showing That Plaintiff's Proposed Wheelchair Ramp Is Highly Unlikely To Be Approved By DOB Or LPC**

As the foregoing cases show, Plaintiff has not met her initial burden to show that a ramp is readily achievable.  As a result, the burden did not shift to the Landlord to show that her ramp is not readily achievable.  But even under the fanciful assumption that her proposed ramp could be deemed plausible so as to shift the burden to the Landlord, the Landlord has carried its burden of persuasion to demonstrate that it is not readily achievable.

First, the Landlord's expert witness, Tom van den Bout, a registered architect with extensive experience in seeking permits from DOB and LPC (*see* Def. 56.1 ¶¶ 35-37), has testified that Plaintiff's proposed installations are highly unlikely to be approved by either DOB or LPC.  Because Plaintiff has not offered any evidence on the subject, Mr. van den Bout's opinion is unrebutted.

Mr. van den Bout states that neither of Plaintiff's proposed ramps would be approved given, at a minimum, three significant violations of the Building Code and the ADA described above—the too-steep slope, lack of handrails, and absence of a landing at the top.  Van den Bout Decl. ¶¶ 22-25.  Based on his experience in submitting over 130 permit applications to DOB, Mr. van den Bout states that DOB has never issued a permit where, as here, the proposal contains material violations of the Building Code.  *Id.* ¶ 25.  As noted, Plaintiff has offered no opposing evidence.

The combination of features that are individually non-compliant, when considered together, make the design unsafe for the wheelchair user.  The wheelchair user is required to ascend an overly steep incline, with no handrails and no level platform on which to stop at the top.  This must be done in the middle of a potentially crowded Soho sidewalk.  Since the door opens outward, it is unclear where the wheelchair user is expected to position herself while the door is being opened outward—on the steep ramp while keeping herself from rolling backwards (with no handrails to hold onto), or somewhere else.  The ADA regulations affirmatively preclude the taking of any measure "that poses a significant risk to the health or safety of individuals with disabilities or others."  28 C.F.R. § 36.304(d)(3).  Plaintiff herself expressed concern about the lack of safety in an overly steep ramp that lacks handrails.  *See* De La Rosa Tr. 72 ("I don't feel safe on anything that's not a permanent solid fixture with side rails and a

sensible incline.  I don't want a very steep incline where I could fall backwards, or no railings on the side where I could fall sideways.  I'm not saying that has happened, just, heaven forbid, I don't want that to happen to me.") (Wolstein Decl., Exh. 8).

In addition to these violations, the ramp has a left "flair" that extends onto the sidewalk in front of the neighboring property to the south.  Def. 56.1 Stmt. ¶ 27.  The Landlord on its own cannot obtain a permit to build onto the sidewalk in front of a neighboring property it does not own.  *Id.*  Thus, to obtain a permit for Plaintiff's design the neighboring owner would have to apply to DOB for a permit to build the left flair portion of the ramp.  *Id.*  That would mean asking the neighboring store owner to seek DOB permission to participate in the building of a ramp that violates the ADA and the Building Code, and that could subject the owner to tort liability if someone is injured by it.  It is highly unlikely that the neighboring property owner would agree to make such an application.  *Id.*

Finally, plaintiff's ramps are highly unlikely to be approved by the LPC.  Plaintiff's ramps require removal of the two steps leading into the store.  Def. 56.1 ¶ 49.  The step removal would raise two significant issues for the Commission:  removal of historical material, and alteration of the historic configuration of the storefront.  Van den Bout Decl. ¶ 28.  There may or may not be historical material beneath the steel plated steps, though cast iron is present on the risers of the steps, on the store façade surrounding the windows, and at the current landing riser at the entry.  *Id.* ¶ 29.  Significantly, removal of the steps would completely alter the 19th century configuration of the storefront.  *Id.*  In Mr. van den Bout's opinion, the LPC is highly unlikely to approve destruction of the steps to the entry in these circumstances, particularly given that the store is accessible to wheelchair users by means of the existing portable ramp.  *Id.*

Mr. van den Bout is a registered architect who practices extensively before the New York City Landmarks Commission and is knowledgeable about the Commission's functioning, standards, and judgments.  He explains that the Commission tends not to approve dramatic alterations of historically significant features of landmarked properties that are not appropriate to the character of the building and/or the district; that when he has submitted applications to LPC that propose dramatic alterations of historic features, he has experienced significant push back at the staff level; and that the staff in such cases has told him to revise the proposed design so that it does not significantly alter the historic features of the property.  Mr. van den Bout is unaware of a single project that has ever been approved by the LPC if the Commission determined that the proposal was historically inappropriate.  His expert opinions are unrebutted.

The foregoing is enough to meet the Landlord's burden of persuasion that Plaintiff's ramp is highly unlikely to be approved by, at a minimum, DOB and LPC and is therefore not readily achievable.  Nonetheless, the Landlord has gone further by designing its own ramp and applying to DOB for a permit, which DOB denied.

As described above, in July 2014, the Landlord submitted an application to DOB seeking a permit to build a permanent wheelchair ramp designed by Mr. van den Bout into the Billabong store.  Mr. van den Bout designed the ramp to come as close as possible to meeting ADA design standards and also complying with the Building Code.  *Id.*  On August 6, 2014, DOB issued a Notice of Objections (Exhibit E to van den Bout Decl.).  Def. 56.1 ¶ 30.

DOB's most significant objection was that the ramp extends onto the sidewalk beyond the 44 inch line, in violation of the Building Code.  As Mr. Van den Bout explains, this is an objection that cannot be cured with a redesign because of the height of the steps and slope rules

in the Building Code and the ADA, as it is not possible to design an ADA-compliant ramp that extends out no more than 44 inches from the property line.  Van den Bout Decl. ¶ 19.[3]

And curing DOB's second objection, to the absence of compliant handrails, would only worsen the violation because extending handrails at each switchback would extend the ramp even further out on the sidewalk and even further beyond the 44-inch limit.

Finally, the Landlord's ramp partially covers a manhole, and there is no way to redesign the ramp to avoid covering the manhole given the 160 inches of ramp that are needed to ramp a 16 inch rise at a 1:10 slope.[4]

      **c.**     **Plaintiff Has Not Proffered A Plausible Wheelchair Lift, And In Any Event The Landlord Has Shown That It Is Not Readily Achievable**

Plaintiff has likewise failed to make a *prima facie* showing that her wheelchair lift is a plausible solution, both because she offers no evidence that the necessary permits are likely to be granted and the additional reason that her proposed lift is admittedly only a "conceptual" drawing of the kind courts have said is insufficient as a matter of law to meet a plaintiff's initial burden.

First, Plaintiff's expert conceded that his lift designs do not consider whether they have any likelihood of being approved by any of the permitting agencies, but rather "assume" that all

---

[3]  Three months earlier, in May 2014, the Landlord made an application to LPC, submitting Mr. van den Bout's ramp design and requesting a meeting with LPC staff to obtain guidance concerning the landmarks issues surrounding the proposed ramp.  Wolstein Decl. ¶ 10 and Exh. 7.  The LPC staff declined to meet with the Landlord's counsel because it considered the ramp design a non-starter.  *Id.*¶ 10.

[4] In light of the foregoing evidence submitted by the Landlord, the facts here are completely unlike those in *Kreisler v. Second Avenue Diner Corp.*, 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012), *aff'd*, 784 F.3d 184 (2d Cir. 2013), in every significant way.  First and foremost, unlike here, **"[t]he sidewalk outside of the Diner along Second Avenue could accommodate a permanent ramp that complies with ADA standards**."  2012 WL 3961304, at *3.  In addition, unlike here the defendants there "never attempted to obtain approval for a permanent ramp, and have provided only generalized eleventh-hour objections concerning the" regulatory obstacles, and seemingly offered no expert testimony on the permitting issues.  *Id.* at *9. And the restaurant at issue was not landmarked so the defendants did not have the additional layer of regulatory review by the LPC the Landlord must contend with here. And the step there was eight inches, *see id.* at *1, half the height of the steps in this case.

the necessary permits are granted.  Def. 56.1 ¶ 50; Zuehl Tr. 46-47, 51.  That alone makes Plaintiff unable to meet her initial burden: if a drawing of a wheelchair lift without regard to whether it would be approved were enough to constitute a plausible option, Plaintiff's burden would be no burden at all since all that would need to be done is draw a picture of a lift with a theoretical concept for installation.  This is a particularly acute deficiency with a facility that requires Landmarks approval before the Landlord is allowed to change even the color of paint on the store façade.  Benenson Tr. 73 (Wolstein Decl. Exh. 9).

Plaintiff's lift proposal is not plausible for an additional and independent reason—because as Plaintiff's expert repeatedly admitted, it is not a plan for construction of a wheelchair lift, but rather a "conceptual" design devoid of the kind of specifics that DOB and LPC would need to evaluate their respective permit applications, and, equally fundamental, that are necessary to assessing the physical feasibility of the lift.

The courts have held that a "conceptual" design does not meet a plaintiff's initial burden of proof under the ADA.  In *Colorado Cross Disability Coalition v. Hermanson Family Ltd*, 264 F.3d 999 (10th Cir. 2001), the court considered a virtually identical fact pattern as here: the plaintiff contended that the defendant was required to install wheelchair ramps to historically designated commercial buildings in a Denver historic district.  The plaintiff's expert "acknowledged that his sketch was 'conceptual'" and testified that "'[w]hen you start talking about real building design," it would "take a team of collaboration of all the parties involved with all the different viewpoints and interests to come up with the solutions."  *Id*. at 1007.  The court held that plaintiff had not satisfied his initial burden because he had offered only "speculative conceptual ideas, rather than a specific design which would be easily accomplishable and able to be carried out without much difficulty or expense."  *Id*. at 1009.  This

factor was also significant in the two other cases involving historic properties discussed above. *See Atlanta Lanmarks,* 452 F.3d at 1274 (plaintiffs failed to make a prima face case because "proposals were non-specific, conceptual proposals that did not provide any detailed cost analysis"); *Speciner v. Nationsbank*, 215 F.Supp.2d at 632-33 (plaintiffs failed to make a prima facie case where "the ramp 'design' was merely conceptual; there were no meaningful cost estimates" and "no effort to see if the obvious problems of interference with utilities (and other matters) under the footprint of the ramp could be overcome").

That is precisely the nature of Plaintiff's lift proposals here.  When questioned on how key aspects of the lift would function, Plaintiff's expert explained that such details were either unknown to him or not settled because his drawings were only "conceptual sketches."  (Zuehl Tr. 52):

- "any number of" dimensions could change between his design and the final drawings (Def. 56.1 ¶ 52; Zuehl Tr. 60);

- He did not know the weight of the lifts (Def. 56.1 ¶ 53; Zuehl Tr. 61);

- He could not say whether the railing would be mounted "on the steps or if they would be on the actual finished floor ground level below" (Def. 56.1 ¶ 54; Zuehl Tr. 61);

- He could not say whether the stairs could support the lift (Def. 56.1 ¶ 55; Zuehl Tr. 62, 64);

- He did not know "where exactly the mounting posts would go" that would mount the railing (Def. 56.1 ¶ 56; Zuehl Tr. 65);

- He was unable to answer questions about how the lift would be attached because those issues are not within his expertise (Def. 56.1 ¶ 57; Zuehl Tr. 66);

- He did not know whether the mounting brackets in his sketch would hold the weight of the rail or the lift (Def. 56.1 ¶ 58; Zuehl Tr. 67);

- The placement of the mounting brackets could change in the final design of the lift (Def. 56.1 ¶ 59; Zuehl Tr. 84);

In short, the "conceptual sketches" offered by Plaintiff are far from an actual design for the lift; design and installation elements could change before any lift design were finalized; and answers to the most basic engineering questions were unknown, such as whether the stairs can support the weight of the lift and railing and how the lift would be attached to the storefront.  While a precise design is not required under *Roberts*, Plaintiff's conceptual proposal does not allow assessment of even its physical or structural feasibility.  It is too uncertain to allow for review by DOB or LPC.  Van den Bout Decl. ¶ 31.  Such a proposal cannot reasonably be understood as a plausible plan for a lift that is readily achievable.

### d.  The Landlord Has Shown That Plaintiff's Proposed Lift Is Not Readily Achievable

Even assuming, contrary to law, that Plaintiff's "conceptual" lift proposal could meet her initial burden, the Landlord has shown that the lift is not readily achievable.  First, like the ramp, the lift dramatically alters the historic configuration of the storefront.  For example, the display window at the top of the steps would be almost completely blocked when the lift is closed.  In addition some kind of support would have to be inserted in order to support the lift.  Van den Bout Decl. ¶ 32.  The LPC is highly unlikely to approve the significant change to the historic storefront, particularly given that wheelchair access to the store is available via the portable ramp.  Again, Mr. van den Bout's expert opinion on this issue is unrebutted.

The standpipe poses an additional and independent problem.  In both of Zuehl's conceptual sketches, access to the left standpipe is blocked by the lift.  Van den Bout Decl. ¶ 33. The Fire Department Rules require unfettered access to standpipes at all times.  *Id.* ¶ 33.  Access to the far left standpipe is not unfettered even in Mr. Zuehl's revised lift drawing (Exh. I to van den Bout Decl.) because the Fire Department could not freely access the left side opening to attach a hose.  *Id.*

**3.   Because No Permanent Ramp Or Lift Is Readily Achievable Defendant's Use Of A Portable Ramp To Provide Access To The Store Does Not Constitute Discrimination Under the ADA**

Because Plaintiff's proposed ramp and lift are not readily achievable, the Landlord has made access to the store "available through alternative methods" that "are readily achievable," 28 C.F.R. § 36.305(a), by installing a portable ramp.  It is undisputed that a wheelchair user can enter the Billabong store by using the portable ramp.  As described above, and in Defendant's Rule 56.1 Statement, a sign in the window informs wheelchair users that they may "ring bell for assistance."  The bell rings loudly inside the store to alert store personnel that it is necessary to set up the portable ramp.  A store employee is available to assist the wheelchair user in using the ramp.  Def. 56.1.[5]  Accordingly, as a matter of law the Landlord has not failed "to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv); *see also Yates v. Sweet Potato Enterprise, Inc.*, 2014 WL 5588555, at *12 (N.D. Cal. Nov. 3, 2014) (restaurant's installation of "a bell with an ISA [International Signs of Accessibility] sign saying, "please ring bell for assistance" and employees opening the door constituted sufficient barrier removal even though plaintiff proposed power door).

**C.   Plaintiff Has Not Made Out A Prima Facie Case Of Discrimination Under The New York State And City Disability Statutes, Or If She Has, The Landlord Has Rebutted It**

The same undisputed facts make apparent that summary judgment should also be granted dismissing Plaintiff's claims for disability discrimination under the New York State Human Rights Law, Executive Law, Article 15 § 290, et seq. ("NYSHRL"), and the New York City Human Rights Law, Administrative Code § 8-107(1)(a) ("NYCHRL").

---

[5] Plaintiff has never tried to enter the store by using the portable ramp.  Def. 56.1 ¶ 10.

To analyze a claim under the NYSHRL courts "use the same standards that apply to federal civil rights statutes such as Title VII of the Civil Rights Act of 1964 . . . and the ADA." *Kemp v. Metro-N. R.R.*, 316 F. App'x 25, 26 (2d Cir. 2009); *see also Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012) *aff'd*, 713 F.3d 163 (2d Cir. 2013) ("Claims under the NYSHRL are analyzed under the same standards as federal discrimination claims."). Thus, for the same reasons Plaintiff cannot establish that the Landlord failed to carry out its barrier removal obligations under the ADA, Plaintiff cannot establish her analogous claim under NYSHRL.

By contrast, "the provisions of New York City's Human Rights Law are to be construed independently from similar or identical provisions of New York state or federal statutes," to effectuate its "uniquely broad and remedial purposes." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).   While this heightened standard might make a difference in some cases, it makes no difference here.  Under the NYCHRL, a plaintiff still "has the initial burden of establishing a prima facie case of discrimination."  *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 290 (E.D.N.Y. 2010).  Plaintiff's failure to come forward with *any* evidence that her proposed ramps and lifts have some likelihood of being approved by DOB and LPC falls short even under the most lenient test.  Or even if could be deemed to meet that burden despite the complete absence of evidence, the Landlord has carried its burden of persuasion to establish that it is not committing disability discrimination where plaintiff's proposed ramps and lifts are both physically and legally impossible, and it provides wheelchair access to the store via its portable ramp.

28

## CONCLUSION

For the reasons set forth above, the Court should grant summary judgment for Defendant

and dismiss the Complaint and this action in its entirety.[6]

Dated: New York, New York
          November 21, 2014

                                       Respectfully submitted,
                                       **SCHLAM STONE & DOLAN LLP**

                  By:       s/  Elizabeth Wolstein_____
                             Richard H. Dolan
                             Elizabeth Wolstein
                             26 Broadway
                             New York, New York 10004
                             Telephone:  (212) 344-5400
                             Facsimile:   (212) 344-7677
                             E-Mail: ewolstein@schlamstone.com

                             *Attorneys for Defendant*

---

[6] In keeping with the practice in this District, Defendant reserves its right to seek attorneys' fees under the ADA's fee shifting provisions once the Court has ruled on this motion, should such a motion be appropriate.  *See, e.g.*, *Adorno v. Port Authority of New York and New Jersey*, 685 F. Supp. 2d 507, 510 (S.D.N.Y. 2010) (motion for attorneys' fees under Title VII after prior jury verdict); *Knoeffler v. Town of Mamakating*, 126 F. Supp.2d 305, 310 (S.D.N.Y. 2000) (motion for attorneys' fees under 42 U.S.C. § 1988 after court had previously granted partial summary judgment for plaintiff on claim under section 1983).