UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEDRA DE LA ROSA,

*Plaintiff,*

-*against*-

597 BROADWAY DEVELOPMENT CORP.,

*Defendant.*

**Docket No. 13-CIV-7999 (LAK) (MHD)**

---

**MEMORANDUM OF LAW OF DEFENDANT 597 BROADWAY DEVELOPMENT
CORP. IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

**SCHLAM STONE & DOLAN LLP**
**Richard H. Dolan**
**Elizabeth Wolstein**
**26 Broadway – Suite 1900**
**New York, New York 10004**
**Telephone:  (212) 344-5400**
**Facsimile:   (212) 344-7677**
**E-Mail: rhd@schlamstone.com**
**E-Mail: ewolstein@schlamstone.com**

*Attorneys for Defendant 597 BROADWAY DEVELOPMENT CORP.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................iii-v

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY......................................................2

ARGUMENT .........................................................................................................................3

I.   PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE
     SHE HAS NOT ESTABLISHED, AND CANNOT ESTABLISH, THAT THE
     LANDLORD DISCRIMINATED AGAINST HER OR THAT SHE IS ENTITLED
     TO THE RELIEF SHE SEEKS ........................................................................................3

     A.   Summary Judgment Standard ...............................................................................3

     B.   The ADA Does Not Require The Landlord To Provide Access To Its Space
          Via Property It Does Not Own Or Control Such As The Party Wall And
          Neighboring Store And Doing So Would Render The Landlord Liable In
          Tort.....................................................................................................................4

          1.   The Landlord Did Not Violate The ADA By Failing To Maintain The
               Holes In The Party Wall Either Until January 2014 Or In Perpetuity ..............5

               a.   Legal Attributes Of A Party Wall ............................................................5

               b.   The Landlord Cannot Unilaterally Maintain Openings In The Party
                    Wall.......................................................................................................6

               c.   The Landlord Had No Ability Or Right To Force Kenneth Cole To
                    Maintain The Openings Through The Expiration Of Its Lease In 2014,
                    Or At All ................................................................................................9

II.  PLAINTIFF IS NOT ENTITLED TO A MANDATORY INJUNCTION ORDERING
     THE LANDLORD TO MEET WITH AND SUBMIT PERMIT APPLICATIONS TO
     CITY AGENCIES .......................................................................................................10

     A.   The Injunction Plaintiff Seeks Is Not Relief Authorized By The ADA,
          And In Any Event She Lacks Standing To Seek Such An Injunction...................11

     B.   Plaintiff Does Not Come Close To Proving Her Entitlement To The
          Mandatory Injunction She Seeks .......................................................................13

          1.   Plaintiff Has Not Met Either Prong Of The Mandatory Injunction
               Standard ......................................................................................................13

C.     The ADA Does Not Require The Landlord To Go Through The Motions Of Seeking Permits It Has Shown Would Not Be Granted ...................................14

1.   The ADA Does Not Require The Landlord To Have A Meeting With DOB Concerning The Ramp Application The Agency Rejected, And Doing So Would Not Resolve DOB's Principal Objection, Which Cannot Be Cured..................................................................................15

2.   The ADA Does Not Require The Landlord To Apply For A Revocable Consent When The Landlord Has Made An Unrebutted Showing That It Has Virtually No Chance Of Being Granted ....................................................17

3.   Application Of The New York City Administrative Code To The Landlord's Evidence Leads To The Same Result...........................................21

III.    THE LANDLORD'S COUNTERCLAIM FOR A DECLARATORY JUDGMENT IS MERITORIOUS FOR THE SAME REASONS THE LANDLORD'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED........................................................22

IV.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HER CLAIM RELATING TO THE SALES FLOOR AREAS FOR THE ADDITONAL REASON THAT SHE WITHDREW THAT CLAIM, THIS COURT DISMISSED IT WITH PREJUDICE, AND IT IS NOT PLED IN THE AMENDED COMPLAINT .................25

CONCLUSION....................................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*25 West 74th Street Corp. v. Wenner*,
    268 A.D.2d 387 (1st Dep't 2000) ...............................................................5-6, 7-8

*5 East 73rd, Inc. v. 11 East 73rd St. Corp.*,
    183 N.Y.S.2d 605 (Sup. Ct. N.Y. Co. 1959) ........................................... 6

*Allen v. Wright*,
    468 U.S. 737 (1984).................................................................................. 12

*Baur v. Veneman*,
    352 F.3d 625 (2d Cir. 2003)..................................................................... 12

*Borkowski v. Valley Central School Dist.*,
    63 F.3d 131 (2d Cir. 1995).................................................................19-20

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011)..................................................................... 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................. 3

*Citigroup Capital Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2011)....................................................................... 13

*Cutting v. Stokes*,
    72 Hun 376, 25 N.Y.S. 365 (1st Dep't 1893) ....................................... 6

*Hubbard v. Rite Aid Corp.*,
    433 F. Supp. 1150 (S.D. Cal. 2006)......................................................... 8

*Kreisler v. Second Ave. Diner Corp.*,
    731 F.3d 184 (2d Cir. 2013),
    *cert. denied*, 134 S. Ct. 2295, 189 L. Ed. 2d 174 (2014) ....................... 12

*Kreisler v. Second Avenue Diner Corp.*,
    2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012),
    *aff'd*, 784 F.3d 184 (2d Cir. 2013) ....................................................20-21

*Loeffler v. Staten Island Univ. Hosp.*,
    582 F.3d 268 (2d Cir. 2009)..................................................................... 21

*In re Montana Wilderness Ass'n*,
  807 F.Supp.2d 990, *aff'd in part, rev'd in part on other grounds*,
  725 F.3d 988 (9th Cir. 2013) ................................................................. 24

*Muhammad v. Walmart Stores E., L.P.*,
  732 F.3d 104 (2d Cir. 2013) .................................................................. 25

*Peregrine Myanmar Ltd. v. Segal*,
  89 F.3d 41 (2d Cir. 1996) ...................................................................... 11

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
  457 F.3d 963 (9th Cir. 2006) ............................................................... 8

*Powell v. National Bd. of Medical Examiners*,
  364 F.3d 79 (2d Cir. 2004) .................................................................... 11

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997) ..................................................................... 3

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
  743 F.3d 11 (2d Cir. 2014) ..................................................................... 3

*Roberts v. Royal Atlantic Corp.*,
  542 F.3d 363 (2d Cir. 2008) ..................................................... 4, 17, 19

*Sakele Brothers, LLC v. Safdie*,
  302 A.D.2d 20 (1st Dep't 2002) ........................................................... 6

*Shaywitz v. Am. Bd. of Psychiatry & Neurology*,
  675 F. Supp. 2d 376 (S.D.N.Y. 2009) ................................................... 12

*Sherald v. Embrace Technologies*,
  No. 11 Civ. 939 (TPG), 2013 WL 126355 (S.D.N.Y. Jan. 10, 2013) ..................... 26

*Tjeknavorian v. Mardirossian*,
  No. 14-CV-5723 (SAS), 2014 WL 5365994 (S.D.N.Y. Oct. 22, 2014) ..................... 3

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995) ....................................................................... 13

*Varriale v. Brooklyn Edison Co., Inc.*,
  252 N.Y. 222, 169 N.E. 284 (1929) ............................................... 5, 6, 7

*Vinokur v. Sovereign Bank*,
  701 F. Supp. 2d 276 (E.D.N.Y. 2010) ................................................... 22

iv

*Whethers v. Nassau Healthcare Corp.*,
  No. 13 Civ. 2991, 2014 WL 4637215 (2d Cir. Sept. 18, 2014)................................... 3

## STATUTES, RULES AND OTHER AUTHORITIES

42 U.S.C. § 12182(b)(2)(A)(iv) ............................................................................. 22
42 U.S.C. § 12183(a)(2)...................................................................................... 4
42 U.S.C.A. § 12188(a)(2)................................................................................. 11

28 C.F.R. § 36.305(a)....................................................................................... 23

36 C.F.R. § 800.3(a)........................................................................................ 24
36 C.F.R. § 800.3(c)........................................................................................ 24
36 C.F.R. § 800.16(v)....................................................................................... 24

Fed. R. Civ. P.
  56.1................................................................................................................ 1
  56(a) ............................................................................................................... 1
  56(c)(2) ........................................................................................................... 4
  56(c)(4) ........................................................................................................... 3

Joseph Rasch and Robert F. Dolan,
  1 N.Y. Law & Practice of Real Property § 17:48 (2d ed.)............................................ 6

Defendant 597 Broadway Development Corp. (the "Landlord" or "Defendant") submits this memorandum of law in opposition to the motion for summary judgment of Plaintiff Dedra de la Rosa and in further support of Defendant's motion for summary judgment dismissing Plaintiff's remaining claims in this action, pursuant to Federal Rule of Civil Procedure 56(a) and Local Civil Rule 56.1.

## PRELIMINARY STATEMENT

The heart of Plaintiff's argument is that the Landlord violated the ADA by failing to provide wheelchair access through the store in an adjoining building by creating an opening in the party wall between its unit and that neighboring store. As discovery showed, the Landlord does not own or control either property. The Landlord has no ability to force the owner of 595 Broadway and its first floor commercial tenant to allow Billabong customers to go through the 595 Broadway store in order to enter the store at 597 Broadway occupied by an unrelated tenant. It is also blackletter law that the Landlord cannot make unilateral use of the party wall as Plaintiff proposes and that to do so would constitute a trespass. Consistent with these principles, the ADA does not require an owner to provide access to its facility via property it does not own or control. Plaintiff's theory of liability is therefore frivolous as a matter of law.

Because Plaintiff cannot show a violation of the ADA, there is no basis to issue any injunction. In addition, the mandatory injunction Plaintiff seeks is insupportable as a matter of law for other reasons. Plaintiff asks the Court to order the Landlord to meet with the New York City Department of Buildings to discuss the wheelchair ramp that the Department has rejected, and to apply to the New York City Department of Transportation for a special permit, known as a revocable consent, to build a ramp that extends more than halfway across the sidewalk on Broadway to the street. As a threshold matter, the ADA does not authorize this kind of

injunction, and Plaintiff lacks standing to seek it because the injunction, even if granted, would not redress her claimed injury of being denied access to the Billabong store.  On the merits, (i) Plaintiff has no irreparable harm, given that she could enter the Billabong store using the portable ramp the Landlord has already installed; (ii) Plaintiff's proposed ramp is not readily achievable, as Landlord has shown in its summary judgment motion and supports with further evidence in this submission; and (iii) as a result, the Landlord has complied with its ADA obligations by providing access in the only readily achievable way (which is the governing ADA standard).  The same evidence shows that the Landlord's counterclaim for declaratory judgment is meritorious, and Plaintiff offers no basis on which it may be dismissed.

In short, Plaintiff has no basis, in law or fact, on which to prosecute this action, which is one of 128 pending ADA cases in the Southern and Eastern Districts brought by Plaintiff's counsel, Parker & Hanski.  Plaintiff's summary judgment motion should be denied, the Landlord's summary judgment motion should be granted, and the Landlord should be allowed to bring its application for attorneys' fees under the ADA at the Court's earliest convenience.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The relevant facts and procedural history are set forth in the Landlord's opening memorandum of law in support of its motion for summary judgment dismissing the Amended Complaint.  *See* Memorandum of Law of Defendants 597 Development Corp. In Support of Summary Judgment Dismissing Amended Complaint ("Def. SJ Mov. Br.") at 3-11.  The Landlord incorporates by reference into this opposition submission that memorandum of law and all the other papers filed by the Landlord in support of its motion.

## ARGUMENT

I.   **PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE SHE HAS NOT ESTABLISHED, AND CANNOT ESTABLISH, THAT THE LANDLORD DISCRIMINATED AGAINST HER OR THAT SHE IS ENTITLED TO THE RELIEF SHE SEEKS**

### A.   Summary Judgment Standard

"Summary judgment is appropriate [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Tjeknavorian v. Mardirossian*, No. 14-CV-5723 SAS, 2014 WL 5365994, at *1 (S.D.N.Y. Oct. 22, 2014) (internal quotation marks omitted) (citing *Whethers v. Nassau Healthcare Corp.*, No. 13 Civ. 2991, 2014 WL 4637215, at *1 (2d Cir. Sept. 18, 2014).).   Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the [non-moving party] and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." *Id.*   (Internal quotation marks omitted) (*citing Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014).   The "moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party. If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986).

A declaration used to support a summary judgment motion must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("The principles governing admissibility of evidence do not change on a motion for summary judgment. . . . Thus, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."). Thus, "a party may object that the

material cited to support . . . a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

    **B.    The ADA Does Not Require The Landlord To Provide Access To Its Space Via Property It Does Not Own Or Control Such As The Party Wall And Neighboring Store And Doing So Would Render The Landlord Liable In Tort**

    Plaintiff is not entitled to a summary judgment holding the Landlord liable for disability discrimination as a matter of law and undisputed fact.  Her sole theory of liability is that the Landlord engaged in discrimination when it failed to retain openings in the party wall shared by 595 Broadway and 597 Broadway, which the Landlord's prior tenant, a Kenneth Cole store ("Cole"), was permitted to make in order to create a single retail store using the adjoining ground floor spaces in the two buildings.  *See* Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment ("Pl. Br.") at 5-18.  Cole was able to make those opening in the Party Wall pursuant to its separate leases with both the Landlord and the owner of 595 Broadway. Plaintiff argues that closing those openings in the Party Wall was an "alteration" within the meaning of the ADA, and constituted discrimination, because the Landlord failed "to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities*, including individuals who use wheelchairs." Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008) (emphasis omitted) (quoting 42 U.S.C. § 12183(a)(2)).  *See, e.g.*, Pl. Br. at 14-16.

    Plaintiff argues that the closing of the holes in the Party Wall eliminated what she claims was a wheelchair-accessible route into 597 Broadway through the neighboring store at 595 Broadway, property the Landlord does not own or control.  The "accessible route," according to Plaintiff, was a path from the 595 Broadway entrance through the space at 595 Broadway, then through the cuts in the Party Wall and into the space at 597 Broadway.  Plaintiff argues that the

Landlord should have (i) required Kenneth Cole to leave the openings in the Party Wall until its lease expired in January 2014, and/or (ii) arranged to have the cut outs in the Party Wall remain beyond the time Cole occupied the Unit, presumably in perpetuity, since Plaintiff now claims that failing to keep the holes open violated the ADA. *See, e.g.*, Plaint. Br. at 14, 15-16, 18.

For the reasons set forth below, Plaintiff's theory of liability is magical thinking and she cannot rely on it to establish a violation of the ADA.

> 1.  **The Landlord Did Not Violate The ADA By Failing To Maintain The Holes In The Party Wall Either Until January 2014 Or In Perpetuity**

Whether closing the openings in the Party Wall in 2008 constituted an "alteration" under the ADA or a lesser modification, Plaintiff's legal theory is frivolous as a matter of law. The undisputed fact is that the Landlord does not own 595 Broadway. Having no interest in the adjoining building, the Landlord could not possibly require the owner of the building, or the tenant now occupying the former Cole space on the ground floor of that building, to allow customers to enter the 597 Broadway's tenant store through the neighboring building. In short, Plaintiff's motion is just further confirmation that, as shown in the Landlord's summary judgment motion, she has no viable basis for prosecuting this case.

> a.  **Legal Attributes Of A Party Wall**

Plaintiff's argument proceeds from the premise that the Landlord controls the Party Wall, but the law (and the facts, *see infra*) is to the contrary:

> It is settled law that a common or party wall "is for the common benefit of contiguous proprietors. Neither may subject it to a use whereby it ceases to be continuously available for enjoyment by the other" (*Varriale v. Brooklyn Edison Co., Inc.*, 252 N.Y. 222, 224, 169 N.E. 284). Each proprietor may subject the wall to whatever uses are proper, if the freedom of the other to use the wall properly is not consequently curtailed (*id.*).

*25 West 74th Street Corp. v. Wenner*, 268 A.D.2d 387, 387-88 (1st Dep't 2000).  As the First Department explained more than a century ago, "[t]he rights of all the parties to [the party wall] are fixed beyond the power of the party of the second part, acting alone, to interfere with it in any way." *Cutting v. Stokes*, 72 Hun 376, 184, 25 N.Y.S. 365 (1st Dep't 1893).[1]

As a result, "there is no right to place windows, or openings, in a party wall, unless there is an agreement between the parties to the contrary." *5 East 73rd, Inc. v. 11 East 73rd St. Corp.*, 183 N.Y.S.2d 605, 614 (Sup. Ct. N.Y. Co. 1959).  As Chief Judge Cardozo explained, "Use by the adjoining owner might be hampered if openings were permitted." *Varriale v. Brooklyn Edison Co*., 252 N.Y. 222, 224 (1929).  In that case, the Court of Appeals affirmed a mandatory injunction requiring the defendant to remove a 2 1/2-ton sign he had placed on the party wall, having determined that the sign was a "continuing trespass." *Id.* at 223.  The Court reasoned that the sign was "an exclusive appropriation, which, so long as it is suffered, will make equal use impossible." *Id.* at 225.   Thus, the only way one neighbor can use a party wall for its own benefit is by agreement:  "A privilege so valuable is not to be appropriated by a strong hand, but should be acquired, if at all, through treaty and consent." *Id.; see also* Joseph Rasch and Robert F. Dolan, 1 N.Y. Law & Practice of Real Property § 17:48 (2d ed.) ("Neither owner has the right to cut windows or openings in a party wall except by agreement.").

### b. The Landlord Cannot Unilaterally Maintain Openings In The Party Wall

597 Broadway was converted to a condominium in 1988.  Declaration of Richard Benenson in Opposition to Plaintiff's Motion for Summary Judgment ("Benenson Opp. Decl.") ¶ 2, and Exh. B ("Declaration Establishing Plan for Condominium Ownership" of 597 Broadway,

---

[1]  "[E]ach of the two adjoining owners ... owns in severalty so much of the wall as stands upon his own lot, each having an easement in the other strip for purposes of the support of his own building." *Sakele Brothers, LLC v. Safdie*, 302 A.D.2d 20, 25 (1st Dep't 2002).

dated November 30, 1988) (the "Declaration").  The Declaration defined the wall between 597 Broadway and 595 Broadway as a party wall, and the "Common Elements" of the condominium to include the Party Wall; and specified that the Common Elements within the commercial units "shall not be considered part of such Unit."  *Id*. ¶¶ 3-4, and Exh. B at  Art. 2, Art. 4.1, and Art. 5.2-2 and 5.2-3.  Thus, unlike the usual case of a party wall between adjoining landowners, the Condominium Association rather than the Landlord owns the portion of the Party Wall on the land known as 597 Broadway.   Defendant's Local Rule 56.1 Statement in Opposition to Plaintiff's Motion for Motion for Summary Judgment ("Def. Opp. 56.1 Stmt.") ¶ 2, 3, 6.  The Landlord also does not have any ownership interest in, operate, or control the adjoining building at 595 Broadway or the ground floor commercial space within that building.  Def. Opp. 56.1 Stmt. ¶ 7.

That is why, when Kenneth Cole sought to cut openings in the Party Wall in 2000 to join its two leased spaces into a single store, the Condominium Association's consent was required, as reflected in the Party Wall Agreement dated September 12, 2000 (Exhibit C to Benenson Opposition Declaration and Exhibit 2 to Parker Declaration) (see pages 1 and 11).  Consistent with the legal attributes of a party wall described above, Cole was permitted to cut the openings only because all parties with an interest in the use of the Party Wall agreed:  Def. Opp. 56.1 ¶¶ 8, 9.  Absent such agreement, any unilateral act making an opening in a party wall would amount to a tort of trespass.  *See, e.g., Varielle*, 252 N.Y. at 224, 226 (sign put up on party wall by one neighbor without adjoining neighbor's consent was "continuing trespass" and affirming grant of mandatory injunction "directing that the trespass end"); *25 West 74th Street, Corp. v. Wenner*, 268 A.D.2d 387, 388 (1st Dep't 2000) (installation of chimneys "span[ing] the entire length of

the common wall" that was "for the exclusive use of defendant" stated cause of action for trespass).

Consistent with those principles, courts have held that that an owner has no obligation under the ADA to provide wheelchair access to its space via property it does not own or control. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (district court "properly ruled that the [defendants] were not required to build an access ramp across the grassy strip" that separated the public sidewalk from the store parking lot since they do not "own, lease, or control the grassy strip"); *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 1150, 1169-70 (S.D. Cal. 2006) ("[T]he Court cannot order the Defendants in this case to alter the path of travel on property that Defendants do not own or operate.").  The court in *Hubbard* applied the "readily achievable" analysis and found that the accessibility problems with the parcel owned by the defendants (parcel 2) could not be corrected without making modifications to the parcels of land on either side of the defendant store owned by others (parcels 1 and 3), and concluded that the plaintiffs had not offered "a 'readily achievable' method of correcting the barriers on parcel 2" because the defendant store "cannot alter the path of travel on property it does not own or control." *Id.* at 1169.

Because the Landlord does not own or control the Party Wall and does not own or control the adjacent space at 595 Broadway, the ADA does not require the Landlord to provide a path of travel into the space at 597 Broadway through the Party Wall or through the neighboring store at 595 Broadway.  Summary judgment dismissing any such claim is appropriate.

c. **The Landlord Had No Ability Or Right To Force Kenneth Cole To Maintain The Openings Through The Expiration Of Its Lease In 2014 , Or At All**

Plaintiff's theory that the Landlord committed discrimination by not keeping the openings in the Party Wall until Cole's lease expired in 2014 is also insupportable. Among other defects, the Party Wall Agreement expressly states that Cole had the right to close the holes at any time. Plaintiff complains that the Landlord made closure of the Party Wall openings a condition of releasing Cole from its lease. But as explained above, the Landlord had no obligation as a matter of law under the ADA to provide access to the store through a party wall that it does not own or control, and no ability as a matter of fact to force the Condominium Association or 595 Broadway to maintain those openings. In fact, the only reason the parties consented to the joining of the spaces was so that Cole could operate a single store occupying both spaces. Benenson Opp. Decl. ¶ 8. The Party Wall Agreement itself makes clear that the parties had no wish to maintain the openings if Cole would not be occupying both spaces, by providing that if either unit's lease "is extended without extension of the other, Cole will restore the Party Wall as of the earlier termination date of the two Leases." Benenson Opp. Decl., Exh. C, at page 4 (¶ 5).

Beyond this, the Landlord had no ability to (i) force Cole to continue to occupy the space through the expiration of its lease on January 31, 2014, or (ii) maintain the openings in the Party Wall even if it did remain in possession through the expiration date of its lease. As to the former, the Landlord had no ability to prevent Cole from vacating the premises even if doing so would breach its lease. Def. Opp. 56.1 Stmt. ¶ 9. Cole could have simply ceased paying rent and vacated the space. *Id.* For such a breach the Landlord has only a legal remedy; it cannot forcibly keep Cole on the premises. Benenson Opp. Decl. ¶ 9.

Moreover, even if Cole wished to stay, or could have been convinced to stay by the Landlord through the end of its lease, Cole was under no obligation to maintain the openings in the Party Wall.  Under the Party Wall Agreement, Cole had "the right at any time to close any such openings and restore the Party Wall to the general condition of such Party Wall on the date hereof."  Benenson Decl., Exh. C at ¶ 5.  Thus, from the time the Agreement was executed in September 2000, the Landlord never had the legal right to force Cole to maintain the openings in the Wall.  Plaintiff's argument to the contrary—that the Landlord had "the right to have kept the Party Wall Agreement in place until the January 2014," Plaint. Br. at 14—is directly at odds with what the contract said on that issue.

## II.    PLAINTIFF IS NOT ENTITLED TO A MANDATORY INJUNCTION ORDERING THE LANDLORD TO MEET WITH AND SUBMIT PERMIT APPLICATIONS TO CITY AGENCIES

Based on the alleged violation regarding the Party Wall, Plaintiff seeks a mandatory injunction directing the Landlord to "initiate" an unspecified "formal process" to "*obtain* government approval*" of a permanent wheelchair ramp, Plaint. Br. at 21, 25—as though approval could be had if only the Landlord submitted the right paperwork.  As part of that, Plaintiff demands an order directing the Landlord to (i) meet with the Department of Buildings (DOB) in an effort to persuade DOB to approve the ramp proposal the Landlord previously submitted and that DOB rejected, and (ii) apply to the New York City Department of Transportation ("DOT") for a revocable consent to build a ramp extending out into the sidewalk beyond the 44 inches allowed under the Building Code.  Plaint. Br. at 30.  Plaintiff's motion offers no proposed ramp design she claims should be submitted to DOT; no evidence that the hypothetical ramp she imagines has a chance of being approved by DOT; no evidence that the hypothetical ramp has a chance of being approved by DOB; and fails to explain what "formal

process" she thinks the Landlord should initiate and how it is different from the "formal process" the Landlord used in submitting an application to DOB for approval of the ramp designed by the Landlord's architect, which DOB rejected.

This request for relief suffers from a catalogue of legal and evidentiary infirmities that make clear Plaintiff is not entitled to the injunction she seeks.

### A. The Injunction Plaintiff Seeks Is Not Relief Authorized By The ADA, And In Any Event She Lacks Standing To Seek Such An Injunction

The problems begin with threshold issues. First, it is doubtful that the injunction Plaintiff seeks is within the scope of the relief authorized by the ADA. "A private individual may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages." *Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 86 (2d Cir. 2004). The injunctive relief provided for in the ADA, however, is of a particular kind, namely, relief that corrects the feature that makes a facility inaccessible to the plaintiff. 42 U.S.C. § 12188(a)(2) states that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter." That is relief tailored to the harm an ADA plaintiff claims—exclusion from the place of public accommodation on account of disability—consistent with the traditional scope of injunctive relief, which "should be narrowly tailored to fit specific legal violations." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 50 (2d Cir. 1996). The order Plaintiff seeks here, by contrast, would not direct the Landlord "to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent" required by other provisions of the ADA, 42 U.S.C. § 12188(a)(2). It is therefore not within the scope of injunctive relief authorized by the ADA.

Nor would the injunction Plaintiff seeks redress the harm for which she is suing under the ADA—her claimed inability to enter the Billabong store—and for that reason Plaintiff lacks standing to seek this relief.  "The requirement of standing ... has a core component derived directly from the Constitution.  A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *See Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 675 F. Supp. 2d 376, 382 (S.D.N.Y. 2009) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 2295, 189 L. Ed. 2d 174 (2014). (among the elements a plaintiff must prove "to satisfy constitutional standing requirements" is "that the injury is likely to be redressed by a favorable decision").

But the order Plaintiff seeks would not redress her claimed inability to enter the Billabong store; it would merely direct the Landlord to communicate with two city government agencies.  In fact, Defendant's expert evidence shows that such an order is highly *un*likely to redress Plaintiff's claimed inability to enter the Billabong store, because even if the relief were granted, there is virtually no chance a ramp would be approved as a result of taking these steps. *See infra*.  Although it is Plaintiff's burden to prove standing, *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011); *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003) ("a plaintiff must demonstrate standing for each claim and form of relief sought."), she has submitted no evidence whatsoever on the question whether the necessary permits are likely to be granted as a result of the meeting with DOB and application to DOT she asks the Court to order.  She has therefore made no showing that her claimed inability to enter the Billabong store would be redressed by a grant of that relief.

12

**B.    Plaintiff Does Not Come Close To Proving Her Entitlement To The Mandatory Injunction She Seeks**

**1.    Plaintiff Has Not Met Either Prong Of The Mandatory Injunction Standard**

Since Plaintiff is not seeking an injunction that falls within the scope of injunctive relief available under the ADA, the usual standard for a mandatory injunction applies.  The Second Circuit applies a heightened standard for the issuance of a preliminary injunction where a "mandatory" preliminary injunction threatens to "alter the status quo by commanding some positive act."  *Citigroup Capital Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2011).  In such cases, an injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Id.*  In other cases, the Second Circuit has phrased the standard as a "clear or substantial showing of a likelihood of success on the merits."  *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995).

As shown in Point II above, Plaintiff has no likelihood of succeeding on the merits of her claim that the Landlord violated the ADA when it failed to maintain the openings in the Party Wall when Kenneth Cole gave up its lease in 2008, or, as shown in subpoint C below, her claim that the ADA requires installation of a permanent ramp.  That alone is enough to preclude the injunction she seeks.  Beyond and independent of that failing, she has no entitlement to the injunction because she has no irreparable harm, and will suffer no "serious damage" from the denial of the requested injunction.  Plaintiff could enter the Billabong store using the portable ramp; she simply has chosen not to.  See Def. Mov. 56.1 Stmt. __ (submitted with Landlord's summary judgment moving papers).

### C.    The ADA Does Not Require The Landlord To Go Through The Motions Of Seeking Permits It Has Shown Would Not Be Granted

Even assuming Plaintiff could overcome the obstacles of having no standing, seeking an injunction not authorized by the ADA, and failing to meet the standard for granting a mandatory injunction, Plaintiff still has made no evidentiary showing that a permanent ramp is required by the ADA.  As demonstrated in the Landlord's moving brief in support of its summary judgment motion, a permanent ramp is not readily achievable, and Plaintiff's contention that meeting with DOB and seeking a revocable consent from DOT would make it so are devoid of evidentiary basis and entirely wrong.  Based on this alleged ADA violation, Plaintiff seeks a mandatory injunction requiring the Landlord to (i) meet with the Department of Buildings (DOB) in an effort to persuade DOB to approve the ramp proposal the Landlord previously submitted and that DOB rejected; (ii) apply to the New York City Department of Transportation ("DOT") for a revocable consent to build a ramp extending out into the sidewalk beyond the 44 inches allowed under the Building Code; and possibly (iii) submit other unspecified paperwork "to initiate the [unspecified] formal process for seeking permission to install a permanent ramp."  Plaint. Br. at 30.  Plaintiff's motion offers no proposed ramp design she claims should be submitted to DOT; no evidence that the hypothetical ramp she imagines has a chance of being approved by DOT; no evidence that the hypothetical ramp has a chance of being approved by DOB; and fails to explain what "formal process" she thinks the Landlord should initiate and how it is different from the "formal process" the Landlord has already initiated with DOB in its application for approval of the ramp designed by the Landlord's architect, which DOB rejected.

**1. The ADA Does Not Require The Landlord To Have A Meeting With DOB Concerning The Ramp Application The Agency Rejected, And Doing So Would Not Resolve DOB's Principal Objection, Which Cannot Be Cured**

Plaintiff argues that the Landlord is violating the ADA because it did not seek a meeting with DOB staff to discuss the agency's denial of the Landlord's permit application. *See* Plaint. Br. at 21-22. The sole support she offers for this argument is to point to a pre-printed statement on DOB's form saying "please schedule meeting to discuss and resolve" these objections. *Id.*at 21-22. Plaintiff's theory appears to be that the agency's objections would melt away and the Landlord's proposed ramp would be approved if only the Landlord would meet with DOB staff to discuss it; or perhaps it is that even if the objections cannot be cured the Landlord should nonetheless go through the motions of meeting with DOB. This argument is devoid of any legal or evidentiary basis.

The DOB does not hold meetings to engage in a collaborative exercise to redesign an applicant's project. As the Landlord's expert explains, if DOB issues objections to a project, the applicant may seek to discuss the issues for the purpose of pointing out that the agency has misunderstood its drawing, incorrectly applied provisions of the Building Code, or to propose a change to the design to make it more approvable. Declaration of Tom van den Bout in Opposition to Plaintiff's Motion for Summary Judgment ("Van den Bout Opp. Decl.) ¶ 3. In this case, DOB did not misunderstand the ramp design in making its objections, nor did it make any mistake in applying the Building Code. *Id.* ¶ 5. To the contrary, the Code violations cited by DOB—that the ramp extends more than 44 inches and lacks handrails as required by the ADA— are present in the Landlord's design. *Id.* 5. The reasons for this are explained in the Landlord's summary judgment motion: to meet ADA technical and design standards, the ramp has to extend well beyond the 44-inch limit. *Id.* ¶ 5; Van den Bout Moving Decl. ¶¶ 17-19.

15

The reach of the ramp onto the sidewalk more than halfway to the street results from applying the ADA's sloping requirements to the steps to be ramped, which rise fully 15.5 to 16 inches from the sidewalk.  Van den Bout Opp. Decl. ¶ 6.  Van den Bout Moving Decl. ¶ 17. With a rise of this height, the maximum slope permitted under the ADA 2010 Design Standards (which Plaintiff argues apply, *see* Plaint. Mov. Br. at 12) is 10 inches of ramp for every one inch of rise—for a total of 155-160 inches of ramp.  Van den Bout Moving Decl. ¶ 17.  To meet the 2010 Standards, the ramp had to therefore be designed as switchback ramp.  *Id.*; Van den bout Opp. Decl. ¶ 6.  Given the height of the steps and the ADA slope requirements, it is physically impossible to create an ADA-compliant ramp that extends no more than 44 inches out from the storefront.  *Id.* ¶ 6.  To add ADA-compliant handrails as required under the Building Code and the ADA would make the ramp extend even further out into the sidewalk.  *Id.* ¶ 7.

Thus, there is no viable re-design of an ADA-compliant ramp that could cure DOB's principal objection that the ramp violates the Building Code by extending more than 44 inches beyond the property line.  Van den Bout Opp. Decl. ¶ 8.  Any ADA-compliant ramp would extend well beyond the 44-inch limit.  *Id.*  Given this, there would be no purpose to seeking to meet with DOB to discuss this DOB objection—since it cannot be resolved.  *Id.*

On top of that, going through the motions of meeting with DOB would do nothing to address the landmarks issues presented by the Landlord's ramp. Id. ¶ 9.  Although DOB is aware of the need for approval of changes to landmarked buildings or buildings in landmarked districts, it does not have jurisdiction to review and approve such changes; only the LPC does.  Van den Bout Opp. Decl. ¶ 9.  As demonstrated in the Landlord's opening summary judgment papers, the Landlord's ramp is highly unlikely to be approved by the LPC for reasons independent of the

Building Code violations.  A meeting with DOB would serve no purpose (other than to create the appearance of doing something) for this additional reason.  Van den Bout Opp. Decl. ¶ 9.

Plaintiff's complaint that the Landlord has not submitted its ramp design to the LPC is not only knowingly false, *see* Moving Declaration of Elizabeth Wolstein in Support of Defendant's Summary Judgment Motion ("Wolstein Mov. Decl.") ¶ 10-11, and Exhs. 7 and 15 (providing copy of Landlord's LPC application at Plaintiff's counsel's request), but more importantly misunderstands the permitting process.  As the Landlord's expert architect explained in his declaration in support of the Landlord's summary judgment motion, LPC typically will not consider an application until all the DOB objections have been resolved, which cannot be done for the reasons explained above and in the Landlord's summary judgment motion.  Van den Bout Mov. Decl. ¶ 12, 19; Van den Bout Opp. Decl. ¶ 8.

### 2. The ADA Does Not Require The Landlord To Apply For A Revocable Consent When The Landlord Has Made An Unrebutted Showing That It Has Virtually No Chance Of Being Granted

Plaintiff's contention that the Landlord should be directed to seek a revocable consent from DOT also rests on nothing.  The sole basis is that the revocable consent process exists: Plaintiff does nothing more than identify the rule and conclude that the Landlord therefore "needs to" make an application.  Pl. Mov. Br. at 23-24.  Putting aside that this turns the burden shifting analysis of *Roberts* on its head as explained below, the Landlord has shown that there is virtually no chance a revocable consent would be granted.

Mr. van den Bout, the Landlord's expert architect, explains that the ramp he designed extends some 118 inches (nearly 10 feet) out from the property line in order to meet the sloping requirements of the 2010 Design Standards, which limit the maximum slope of any ramp to cover a rise of more than six inches to 1:10, that is, there must be 10 inches of ramp for every

one inch the steps rise.  Van den Bout Moving Decl. ¶ 17.  The necessary 155-160 inches of ramp requires a switchback ramp that extends nearly 10 feet from the property line.  *Id*.  The ADA-compliant handrails that would have to be added as noted on DOB's objection sheet would extend the ramp even further across the sidewalk toward the curb.  A ramp of such dimensions would create a hazard for pedestrians, cover MTA sidewalk vaults, and cover a manhole.  Van den Bout Opp. Decl. ¶ 12.

Building owners do not have jurisdiction over manholes, which need to remain accessible so they can remain active and in use for whatever system they service.  *Id*. ¶ 13.  An ADA-compliant ramp of the necessary length will always cover the manhole.  *Id*.  As with the 44-inch rule, there is no way to cure this problem because of the length of ramp required to create an ADA-compliant ramp for steps that rise 16 inches.  *Id*.

MTA sidewalk vaults lie beneath the sidewalk immediately in front of the store.  The vaults have large steel gratings flush with the sidewalk that allow fresh air into the track system below Broadway.  It cannot simply be assumed that blocking the grates with a ramp would be permitted.  *Id.* ¶ 14.

Most importantly, a ramp extending onto the sidewalk more than halfway from the storefront to the street poses a hazard to pedestrians, particularly on a street as crowded as this block.  *Id*. ¶ 15.  Mr. van den Bout explains that obstructions of this scope are never permitted for obvious reasons of life safety – they force pedestrians into the roadway.  *Id*.  The ramp would also create a tripping hazard.  *Id*.  These problems mean there is virtually no chance a revocable consent would be granted by DOT for an ADA-compliant wheelchair ramp.  *Id.* ¶ 16.

Plaintiff points to revocable consents granted for extensions of *other* structures in front of *other* buildings or on "other projects" undertaken by Mr. van den Bout.  *See* Plaint. Mov. Br. at

24.  But that argument is irrelevant and the factual "support" for it is inadmissible:  Plaintiff's examples involve work of a different nature, consisting of a different or unidentified structure, and extending a different (and far shorter) length onto the sidewalk.  Nothing about those examples is probative of what is physically feasible for 597 Broadway.  Likewise, the fact that Landlord has in the past sought permits for minor work to the interior of the store (which is not landmarked), *see* Plaint. Mov. Br. at 22, is irrelevant and inadmissible for the same reason.

In any event, the vast difference between those other two projects of Mr. van den Bout's and this case once again highlight the implausibility of plaintiff's claim for relief.  One revocable consent was a steel hatchway flush to the sidewalk that gave access to the associated building's cellar.  The hatchway submitted for approval did not encroach onto the sidewalk at all.  Van den Bout Opp. Decl. ¶ 17.  The second was for a front stoop that extended beyond the front property line of a new townhouse—which also did not encroach onto the sidewalk at all.  *Id*. The proposed stoop was granted a revocable consent because it did not in any way infringe on the sidewalk, and it lined up with neighboring properties and established a contiguous fence and garden line.  *Id*.  Mr. van den Bout explains that both of these are good examples of revocable consents that were granted because of their minimal impact on the streetscape.  In contrast, the proposed ramp obstructs city infrastructure and significantly obstructs a public way.  *Id*.  In Mr. van den Bout's unrebutted professional opinion, a ramp "is not feasible at this location."  *Id.*

Finally, Plaintiff's entire argument rests on the mistaken premise that she has *no* evidentiary burden to meet before the Landlord is required to show that it is not in violation of the ADA.  *Roberts* holds otherwise.  To meet her initial burden to present a *prima facie* case, a plaintiff must "articulate a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed the benefits.'"  *Roberts*, 542 F.3d at 373 (quoting *Borkowski v. Valley*

*Central School Dist.*, 63 F.3d 131 (2d Cir. 1995)).  Contrary to Plaintiff's argument, the heightened standard for "alterations" does not apply in evaluating Plaintiff's request for an injunction directing the Landlord to initiate an unspecified "formal process" to seek approval of a permanent ramp because there is no contention, nor could there be, that the entry to the Billabong store has been "altered," or even modified in any respect, since the ADA was enacted. Plaintiff's prima facie case consists of pointing to language on a pre-printed DOB form and to the existence of a City rule allowing DOT to issue revocable consents.  That is not a "plausible proposal for barrier removal."  *Roberts*, 542 F.3d at 373.

In light of all this, Plaintiff's reliance on *Kreisler v. Second Avenue Diner Corp*., 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012), *aff'd*, 784 F.3d 184 (2d Cir. 2013), is misplaced, because the case is distinguishable in every significant way.  First and foremost, **"[t]he sidewalk outside of the Diner along Second Avenue could accommodate a permanent ramp that complies with ADA standards**."  2012 WL 3961304, at *3.  The Landlord's expert evidence has demonstrated that that is most certainly not the case here.  That physical reality is so uncontroversial that Plaintiff has not controverted it with *any* expert opinion.

In addition, the restaurant in *Kreisler* was not landmarked.  Thus, the defendants did not have the additional layer of regulatory review by the LPC that is required here and that, as Mr. van den Bout explains, diminishes considerably the already low likelihood of approval.  Thus, even in a hypothetical world in which DOB and DOT would issue the necessary permits, a ramp would still have to be approved by LPC.  For the reasons explained in Mr. van den Bout's moving declaration, the odds of that happening are little to none.  Our expert evidence shows that the odds that *all three* permitting agencies would approve a ramp is vanishingly slight.

Finally, the defendants' evidentiary showing in *Kreisler* was nowhere near the Landlord's showing here.  Indeed, it appears from Judge Sullivan's opinion that the defendants offered *no* evidence on the likelihood that the necessary permits could be obtained.  The court noted that although the defendants claimed that they would be unable to obtain the permits, these were only "generalized eleventh-hour objections" and the defendants were "unable to substantiate that assertion in any way at trial."  *Id.* at *8, *9.  Here, by contrast, the Landlord has offered expert evidence that the likelihood of obtaining all the necessary permits is virtually non-existent.  That evidence is unrebutted.  Finally, unlike the defendants in *Kreisler* who "concede that they have never attempted to obtain approval for a permanent ramp," *id.* at *9, the Landlord submitted applications to both DOB and LPC, and was rejected by each agency.  *See* Van den Bout Decl. ¶ 16; Wolstein Mov. Decl. ¶ 10, and Exh. 7.

### 3. Application Of The New York City Administrative Code To The Landlord's Evidence Leads To The Same Result

Plaintiff argues that even if she is not entitled to relief under the ADA, the question of what modification should be made "must be independently evaluated" under the New York City Human Rights Law, which is required to be interpreted "'more liberally'" than [its] federal and state counterparts."  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009); Pl. Br. at 28-29.  While this proposition has been articulated in numerous cases, it is difficult to find a case in which application of the standard made a difference in the result.  In *Kreisler*, on which Plaintiff relies, Judge Sullivan found that the plaintiff had established some ADA violations but failed to establish others, and reached that same result applying the New York City statute, because "the Court is aware of no facts that would justify any different result under the NYCHRL."  *Kreisler*, 2012 WL 3961304, at *14.  And even under "the NYCHRL, a plaintiff

still "has the initial burden of establishing a *prima facie* case of discrimination." *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 290 (E.D.N.Y. 2010); *see also* Def. SJ Mov. Br. at 27-28.

Even if application of the New York City Human Rights Law could lead to a different result in a hypothetical case, there is no chance of that here. The Landlord has demonstrated, both in its opposition to Plaintiff's motion and in its own motion for summary judgment, that an ADA-compliant ramp is not feasible in the available space and has no chance of being approved by all three permitting agencies whose approval would be required (DOB, LPC, and DOT). Plaintiff offers no evidence to call into question the Landlord's showing, much less rebut it. Application of even the most liberal standard of review does not change that reality.

## III. THE LANDLORD'S COUNTERCLAIM FOR A DECLARATORY JUDGMENT IS MERITORIOUS FOR THE SAME REASONS THE LANDLORD'S SUMMARY JUDGMENT MOTION SHOULD BE GRANTED

Although Plaintiff states that the Landlord's counterclaim is premised on the location of the Building in a historic district, *see* Pl. Br. at 18, that is manifestly untrue. As the Landlord's summary judgment motion recognizes, the applicable standard here is no different than at any pre-ADA facility: the proposed modification must be made if it is "readily achievable." *See* Def. SJ Mov. Br. at 14 (citing, among other authorities, 42 U.S.C. § 12182(b)(2)(A)(iv) (discrimination includes "a failure to remove architectural barriers . . .in existing facilities . . . where such removal is readily achievable"). That is the standard applied in the three cases involving historic properties discussed in the Landlord's summary judgment moving brief. *See* Def. SJ Mov. Br. at 18-19. As explained above there has been no modification to the store entry since enactment of the ADA, so the "alteration" standard does not apply.

Thus Plaintiff's suggestion that the Landlord is trying to "escape its legal obligations just because the building is within a historic district" is completely false. Plaint. Mov. Br. at 20. To

the contrary, the Landlord has fully complied with its obligations to remove architectural barriers through a method that is readily achievable, to the maximum extent feasible.  As demonstrated in the Landlord's summary judgment motion, installation of an ADA-compliant permanent ramp providing entry into the Billabong store is not readily achievable.  *See* Def. SJ Mov. Br. at 16-23.  By installing a portable ramp with a sign and call button, Landlord has satisfied its obligation to make the store "available through alternative methods, if those methods are readily achievable."  28 C.F.R. § 36.305(a).  *See id*. at 27.

    As for Plaintiff's contention that the Landlord is by statute and regulation required to consult with the Landmarks Preservation Commission, *see* Plaint. Br. at 19, this is completely wrong and well illustrates Plaintiff's approach to her motion—to throw something out and hope it will stick no matter how wrong, misleading, untrue, or lacking in evidentiary support it is.  Plaintiff argues, citing Section 202.5 of the ADA's 2010 Design Standards, that Defendant can be excused from its obligation to comply with ADA standards if it "consulted with Landmarks Preservation and received a determination that compliance" with the standards "would threaten or destroy the historic significance of the building."  Plaint. Br. at 19.  At the outset, this argument is simply irrelevant.  The Landlord is subject to the "readily achievable" standard that applies to every other pre-ADA building, subject to some allowance for compliance by historic properties "to the maximum extent feasible," and to the standard that allows for alternative barrier removal, provided it is readily achievable, if the usual method of barrier removal is not "readily achievable."  The Landlord is not arguing that it should be excused from its obligations under the ADA.

    On the merits, furthermore, the "State Historic Preservation Officers" referred to in 202.5 of the 2010 ADA Standard for Accessible Design have no role in administering the New York

City landmarks laws.  As this standard explains, "State Historic Preservation Officers are State appointed officials who carry out certain responsibilities under the National Historic Preservation Act."  2010 ADA Standard for Accessible Design Section 202.5.  Thus, "State Historic Preservation Officers," a capitalized term, is not a generic term for any state or local landmarks commission, but rather an official with particular duties under *federal* law.  *See also* 36 C.F.R. § 800.16(v) (defining "State Historic Preservation Officer" as "the official appointed or designated pursuant to section 101(b)(1) of the [National Historic Preservation] act to administer the State historic preservation program or a representative designated to act for the State historic preservation officer").

More specifically, the SHPO performs a consultative role for purposes of *federal* law—to assess federal projects undertaken by federal agencies for their impact on historic properties protected under the National Historic Preservation Act.  *See* 36 C.F.R. § 800.3(a) and (c); *In re Montana Wilderness Ass'n*, 807 F.Supp.2d 990, 1003 (D. Mont. 2011) ("An agency engaging in an undertaking [defined as an agency's funding "in whole or in part [of] a project, activity, or program] must consult with the State Historic Preservation Officer."), *aff'd in part, rev'd in part on other grounds*, 725 F.3d 988 (9th Cir. 2013).  Thus, the only role an SHPO could have if consulted about the impact of an ADA-related modification on a historic property is to assess the impact for purposes of federal law, namely, the National Historic Preservation Act.  The SHPO has no role in applying or enforcing New York City local laws governing the modification of properties designated as historic under *local* law.

Finally, Plaintiff's argument that the Landlord is required under the ADA to "consult with" the LPC also fails for evidentiary reasons, since the Landlord's expert explained that the LPC will not consider a project until DOB's objections have been resolved, *see* Def. Mov. 56.1

24

Stmt.¶ 12, and there is no way to resolve DOB's objection.  Thus in addition to having no legal basis and being affirmatively misleading in arguing that the LPC falls within the definition of a State Historic Preservation Officer, Plaintiff's argument is at odds with the Landlord's unrebutted evidence.

IV. **PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HER CLAIM RELATING TO THE SALES FLOOR AREAS FOR THE ADDITIONAL REASON THAT SHE WITHDREW THAT CLAIM, THIS COURT DISMISSED IT WITH PREJUDICE, AND IT IS NOT PLED IN THE AMENDED COMPLAINT**

Finally, the Court should deny that part of Plaintiff's motion claiming that the Landlord violated the ADA by not providing "an unobstructed path of travel to the sales floor areas" of the Billabong store for the additional reason that this claim has been dismissed with prejudice and is not asserted in the Amended Complaint.  Pl. Br. at 18; (*see generally* Point I.D at 16-18).  After reaching a financial settlement with former co-defendant Billabong, the store tenant, Plaintiff voluntarily withdrew, and the Court dismissed with prejudice "any and all claims in her complaint in this action (the "Complaint") for," among other things, "any and all relief based on the allegations in the Complaint relating to the interior of the Billabong store."  *See* Declaration of Elizabeth Wolstein in Opposition to Plaintiff's Summary Judgment Motion ("Wolstein Opp. Decl.") ¶ 1, and Exhibit A (so-ordered stipulation dismissing claims with prejudice).  Consistent with this dismissal, Plaintiff's Amended Complaint does not include any allegations relating to the path of travel to the sales floor.  Rather, the claimed violations identified in the amended complaint, and the few factual allegations underlying them, all relate to the alleged inaccessibility of the store entrance.  *See* Wolstein Opp. Decl., Exhibit B (Amended Complaint) ¶¶ 15-21.

Plaintiff cannot obtain summary judgment on a claim that has already been dismissed with prejudice.  Even apart from that factor, Plaintiff cannot obtain summary judgment on an unpled claim relating to the sales floor areas.  *See Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 107 (2d Cir. 2013) ("district court was understandably displeased" by plaintiff's counsel's "introduction of an unpled gender-discrimination claim" on summary judgment, though conduct did not warrant *sua sponte* imposition of Rule 11 sanctions); *Sherald v. Embrace Technologies*, No. 11 Civ. 939 (TPG), 2013 WL 126355, at *8 (S.D.N.Y. Jan. 10, 2013) (because amended complaint  "does not contain a single factual allegation related to" "claim for certain work performed by plaintiff after his termination" argued on summary judgment, "the court will not adjudicate it on summary judgment").  Presumably this claim relating to the interior of the store was factored into Plaintiff's settlement with Billabong, for which she evidently obtained attorneys' fees but did not insist on any modification to correct the claimed inaccessibility of the sales floor.  In any event, Plaintiff's attempt to obtain summary judgment against the Landlord on this dismissed and unpled claim relating to the path of travel to the sales floor should be denied on this addition ground.

## <u>CONCLUSION</u>

For the reasons set forth above and in Defendant's summary judgment moving papers,

the Court should deny in its entirety Plaintiff's motion for summary judgment.

Dated: New York, New York
      December 19, 2014

Respectfully submitted,

**SCHLAM STONE & DOLAN LLP**

By:    s/  Elizabeth Wolstein_____
      Richard H. Dolan
      Elizabeth Wolstein
      26 Broadway
      New York, New York 10004
      Telephone:  (212) 344-5400
      Facsimile:  (212) 344-7677
      E-Mail: ewolstein@schlamstone.com

*Attorneys for Defendant*
