UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEDRA DE LA ROSA,

*Plaintiff,*

-*against*-

597 BROADWAY DEVELOPMENT CORP.,

*Defendant.*

Docket No. 13-CIV-7999 (LAK) (MHD)

---

**REPLY MEMORANDUM OF LAW OF DEFENDANT 597 BROADWAY
DEVELOPMENT CORP. IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

---

**SCHLAM STONE & DOLAN LLP**
Richard H. Dolan
Elizabeth Wolstein
26 Broadway – Suite 1900
New York, New York 10004
Telephone:  (212) 344-5400
Facsimile:  (212) 344-7677
E-Mail: rhd@schlamstone.com
E-Mail: ewolstein@schlamstone.com

*Attorneys for Defendant 597 BROADWAY DEVELOPMENT CORP.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................ii-iii

PRELIMINARY STATEMENT .......................................................................................1

ARGUMENT....................................................................................................................2

I.     THE TESTIMONY OF DEFENDANT'S EXPERT ARCHITECT IS
       ADMISSIBLE AND UNCONTROVERTED.........................................................2

       A.     The Landlord's Expert Architect Is Highly Qualified ............................2

       B.     Mr. van den Bout's Opinions Have A Reliable Foundation
              And Are Consistent With His Deposition Testimony................................5

II.    PLAINTIFF HAS NOT PROVIDED ANY EVIDENCE TO
       CONTROVERT THE LANDLORD'S SHOWING THAT ITS
       RAMP IS NOT READILY ACHIEVABLE ..........................................................9

       A.     Plaintiff's Preference For The Landlord's Ramp Design Cannot
              Defeat Summary Judgment .....................................................................9

       B.     The "Alteration" Standard Does Not Apply Because There
              Has Been No Alteration Of The Store Entrance ....................................10

       C.     This Court Cannot Order The City Of New York To Approve
              The Landlord's Ramp .............................................................................12

III.   PLAINTIFF'S MENTION IN HER OPPOSITION BRIEF OF
       "OTHER PROPOSALS" CANNOT DEFEAT SUMMARY JUDGMENT.....................13

       A.     Plaintiff Offers No Admissible Expert Evidence And Thus Has Failed To
              Controvert The Landlord's Expert Declaration Testimony ....................13

              1.     Plaintiff Offers No Admissible Evidence Relating To Her Lift ...............14

              2.     Plaintiff Offers No Evidence Concerning Her Ramp Proposal .................15

CONCLUSION.................................................................................................................18

## TABLE OF AUTHORITIES

### CASES

*American Home Assurance Co. v. Merck & Co.*,
   462 F. Supp. 2d 435 (S.D.N.Y. 2006)......................................................................7

*Amorgianos v. National Railroad Passenger Corporation*,
   303 F.3d at 256 (2d Cir. 2002)...............................................................................5

*Brazier v. Hasbro, Inc.*,
   No. 99 Civ. 11258, 2004 WL 1497607 (S.D.N.Y. July 6, 2004) ......................14

*Celeste v. East Meadow Union Free School District*,
   373 Fed. Appx. 85 (2d Cir. 2010)........................................................................14

*Cornell Research Foundation, Inc. v. Hewlett-Packard Co.*,
   No. 501-CV-1974, 2007 WL 4349135 (N.D.N.Y. Jan. 31, 2007)...............13-14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)................................................................................................6

*Design X Manufacturing, Inc. v. ABF Freight Systems, Inc.*,
   584 F. Supp. 2d 464 (D. Conn. 2008)..................................................................13

*Ellsworth v. Tuttle*,
   148 Fed. Appx. 653 (10th Cir. 2005)......................................................................8

*Gill v. Arab Bank, PLC*,
   893 F. Supp. 2d 523 (E.D.N.Y. 2012) ...................................................................6

*Glowczenski v. Taser International, Inc.*,
   928 F. Supp. 2d 564 (E.D.N.Y. 2013), *aff'd in part, dismissed in part*,
   2014 WL 6911366 (2d Cir. Dec. 10, 2014) ........................................................13

*In re Fosamax*,
   645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009)...........................................................6

*In re Fosamax Products Liability Litigation*,
   807 F. Supp.2d 168 (S.D.N.Y. 2011), *aff'd*, 707 F.3d 189 (2d Cir. 2013),
   and *aff'd*, 509 F. App'x 69 (2d Cir. 2013)  ...........................................................5

*ITC Ltd. v. Punchgini, Inc.*,
   482 F.3d 135 (2d Cir. 2007).................................................................................13

*Katt v. City of New York*,
   151 F.Supp.2d 313 (S.D.N.Y. 2001)......................................................................7

*Kreisler v. Second Avenue Diner Corp.*,
   2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012)............................................................. 15-16

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)..................................................................................................6

*Pension Committee of University of Montreal Pension Plan v. Banc of America Securities, LLC*,
   716 F.Supp.2d 220 (S.D.N.Y. 2010)...................................................................5, 7

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir.1997)........................................................................................13

*Rexnord Holdings, Inc. v. Bidermann*,
   21 F.3d 522 (2d Cir. 1994).......................................................................................16

*Roberts v. Royal Atlantic Corp.*,
   542 F.3d 363 (2d Cir. 2008)...............................................................................11, 14

*United States v. Georgia*,
   546 U.S. 151 (2006)................................................................................................12

## RULES, CODES, LAWS, STATUTES
## AND OTHER AUTHORITIES

42 U.S.C. § 12131(1) .................................................................................................12

42 U.S.C. § 12132.....................................................................................................12

42 U.S.C. § 12183(a)(2)............................................................................................10

28 C.F.R. § 36.402(a)........................................................................................... 10-11

Federal Rule of Civil Procedure Rule 56(a) ...............................................................1

Federal Rule of Civil Procedure Rule 56(e) ............................................................13

Local Rule 56.1...........................................................................................................1

Defendant 597 Broadway Development Corp. (the "Landlord" or "Defendant") submits this reply memorandum of law in further support of its motion for summary judgment dismissing Plaintiff's Amended Complaint in its entirety, pursuant to Federal Rule of Civil Procedure 56(a) and Local Civil Rule 56.1.

## PRELIMINARY STATEMENT

Plaintiff's opposition papers raise no triable issue of fact. She offers no declarations, and therefore no admissible testimony to controvert the declarations of the Landlord's expert, Mr. van den Bout, explaining why the physical limitations of the storefront space, and significant landmarks issues, make it highly unlikely that a wheelchair ramp or lift would be approved for construction by the relevant permitting agencies. A ramp and lift are simply not feasible, much less are they "readily achievable." And contrary to Plaintiff's argument "readily achievable" is the standard, not the ADA's "alterations" standard, because the statute and regulations make expressly clear that the "alterations" standard applies only to those parts of an existing building that have been altered. There is no contention here that the steps into the store have been altered in the period since 1992. The evidence that a ramp and lift are not readily achievable is ample and uncontroverted.

Plaintiff's opposition essentially rests on the fact that she wants a ramp. She explains that the Landlord's proposed ramp is her "first choice," preferred by her even to the one designed by her own expert architect, whose design she has not submitted either in support of her motion or in opposition to the Landlord's motion. But a wish cannot defeat summary judgment. Plaintiff's unsworn, hearsay expert reply report is not admissible evidence, nor are her lawyers' factual contentions in her opposition brief. There is simply nothing in Plaintiff's opposition papers that

creates an issue of *material* fact requiring a trial.  Accordingly, Defendant's summary judgment motion should be granted.

**ARGUMENT**

**I.    THE TESTIMONY OF DEFENDANT'S EXPERT ARCHITECT IS ADMISSIBLE AND UNCONTROVERTED**

Plaintiff argues that the testimony of Defendant's expert architect, Tom van den Bout, is inadmissible on the grounds that Mr. van den Bout is "not sufficiently qualified" to offer an opinion on the feasibility of a wheelchair ramp, and because his testimony lacks a reliable foundation.  *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp. Br.") at 2-8.  Both contentions are manifestly without merit.

**A.    The Landlord's Expert Architect Is Highly Qualified**

There can be no doubt that Mr. van den Bout is highly qualified to provide an expert opinion on the feasibility of a wheelchair ramp to the 597 Broadway entrance.  Mr. van den Bout is a registered architect, licensed to practice architecture in New York as well as New Jersey, Connecticut, Vermont, and Virginia.  Declaration of Tom van den Bout dated November 21, 2014 ("Van den Bout Mov. Decl.") ¶ 1.  He has practiced with his own architecture firm for 20 years, since 1994, and practiced elsewhere before that.  *Id.* ¶ 3, and Exh.A.  The bulk of his practice "involves New York City landmarked properties or the process for obtaining LPC [Landmark Preservation Commission] approval" for work on landmarked properties like 597 Broadway.  *Id.* ¶ 4.  As a result, Mr. van den Bout spends a "significant portion" of his time

> developing architectural plans that I know will need LPC approval, and advising clients on what the likelihood is that LPC will approve a particular project, and on how to design a project so that it has the strongest chance of being approved by LPC and DOB.

*Id.* ¶ 4.

2

Since 1994, Mr. van den Bout has been the architect of record for 130-150 submissions to the New York City Department of Buildings, and 100 submissions to LPC. *Id.* ¶ 5.  These are submissions to obtain permits from the agencies to perform work on particular properties.  *Id.* Based on his long experience, Mr. van den Bout has developed an expertise in working with "the New York City Building Code, the New York City Fire Code, the New York City Zoning Resolution, the rules of the LPC, the rules of the New York City Department of Transportation," among other New York City rules and codes."  *Id.*  He is also familiar with "many of the technical and design standards" of the ADA, "particularly those applicable to wheelchair ramps and other means of wheelchair access into public places."  *Id.*  Notably, while arguing that Mr. van den Bout is not qualified to offer an expert opinion, plaintiff points to Mr. van den Bout's ramp design as her "first choice" for a ramp, Pl. Opp. Br. at 12, above that of her own retained expert, whose ramp design plaintiff has not offered in support of her summary judgment motion or in opposition to the Landlord's motion.

Contrary to Plaintiff's argument, the Landlord is not offering Mr. van den Bout as an expert on the ADA or "how the ADA applies to landmarked buildings."  Pl. Opp. Br. at 2, 4.  Far from offering an opinion on any legal issue about "the ADA," Mr. van den Bout has addressed the feasibility of installing a ramp to provide wheelchair access at 597 Broadway that could satisfy the various criteria established by the LPC and DOB – an issue that falls well within his area of expertise.  Even concerning the ADA, the snippet from his deposition Plaintiff presents in her brief gives a misleading impression of Mr. van den Bout's testimony on the matter.  For example:

- Mr. van den Bout testified that while he is "not an ADA expert," he has "a lot of experience putting in applications at the Buildings Department and with Landmarks and I'm familiar with these issues.  I can lay out a ramp."  Deposition

of Tom Van den Bout ("Tr.") 26 (attached as Exhibit 1 to the Reply Declaration of Elizabeth Wolstein).

- Asked whether he was "an expert on wheelchair accessibility of a building," he answered: "No, I'm a -- I'm an expert -- I'm not sure what 'expert' means for you, but I am a highly qualified architect as it relates to landmarks and I have a great deal of experience at the Building Department." Tr. 27.

- He testified that he has "looked a number of times at ADA rules as it relates to historic districts and historic building structure, that portion of it because it relates to my preservation work." Tr. 35.

- While Mr. van den Bout testified that a deposition question asking whether he was qualified to make an expert determination as to whether a commercial store complies with the laws regarding wheelchair accessibility was too broad to answer, he testified that "I feel absolutely qualified to judge whether a building qualifies if you begin to bracket it down to this particular building, something in a landmark district that has the configuration this building has, and we're talking about accessibility from the street to the space." Tr. 30-31.

Contrary to Plaintiff's argument and representation of his deposition testimony, *see* Pl. Opp. Br. at 4, Mr. van den Bout testified that he considers himself fully qualified to assess whether DOB, LPC, and DOT would approve a ramp or a lift at 597 Broadway:

> Q.  Do you believe that you are qualified as an expert as to whether or not the DOB would approve or not approve a submission?
>
> A.  So as a business practice the reason we say no, I say no to the – the prior question that we put in writing is because our fee with any project is an extremely small fraction of the liability we take on. My insurance company would, if they found out that I was certifying whether, guaranteeing a permit for anybody, DOB, Landmarks, would never ensure [sic] me again. The liability would be phenomenal.  I make -- I -- every – every developer, every owner wants to know, wants a guarantee that they're going to get a permit by such and such a date from Landmarks or DOT or whatever and it would be -- it would be very foolish to guarantee anything that's subject to what's -- what's happening in the culture of the Department of Buildings now and in the past and as -- and for Landmarks as subject to, you know, a group of people.  I can -- I can give an opinion as to whether something is likely, and I'll gladly give that, you know,

> what I think the likelihood or how difficult it will be, and I
> -- in the course of what I do make --know enough about the
> zoning ordinance and the code to shape a building that,
> from the best of my knowledge, complies and doesn't
> require variance....

Tr. 118-19 (Wolstein Reply Decl., Exh.1).  As Mr. van den Bout's declarations make apparent,

the Landlord has offered Mr. van den Bout on the subject of the feasibility of a wheelchair ramp,

and on Plaintiff's proposed ramp and lift, including both the physical feasibility and the

likelihood of obtaining the necessary permits to install such structures.  With his background,

experience, and expertise, Mr. van den Bout far exceeds the "liberal[] . . . expert qualification

requirements" that prevail in this Circuit.  *Pension Committee of University of Montreal Pension*

*Plan v. Banc of Amer. Securities, LLC*, 716 F.Supp.2d 220, 223 (S.D.N.Y. 2010).

### B.   Mr. van den Bout's Opinions Have A Reliable Foundation And Are Consistent With His Deposition Testimony

Plaintiff argues that Mr. van den Bout's opinion that DOB and LPC are unlikely to

approve a ramp should be excluded because they are not supported by a "methodology."  Pl.

Opp. Br. at 6-8.  The only cases cited in support involve opinions concerning medical causation,

and they were not decided on the ground that the expert did not have a methodology.  *See*

*Amorgianos v. National Railroad Corporation,* 303 F.3d at 256, 268 (2d Cir. 2002) (upholding

exclusion of expert opinions as to whether paint fumes caused plaintiff's condition because one

expert's study was flawed as to degree of exposure and general and specific causation excluded

other expert admitted he did not apply his own method of chemical analysis); *In re Fosamax*

*Products Liability Litig.*, 807 F. Supp.2d 168, 182 (S.D.N.Y. 2011) (rejecting as speculative

expert's opinion on whether condition worsened as result of ongoing use of drug expert's

deposition testimony that "'Oh, I don't think anybody can tell, simply because who can predict

the future or the past? [sic] It's a what-if question.'"), *aff'd*, 707 F.3d 189 (2d Cir. 2013), and

*aff'd*, 509 F. App'x 69 (2d Cir. 2013). In any event, scientific testimony raises distinct issues concerning reliability exactly because the "scientific method" is different from methods of study in non-scientific subjects. *See, e.g., Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 (1993) ("a key question to be answered" in determining reliability of scientific testimony is "whether it can be (and has been) tested;" "[s]cientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry."); *In re Fosamax*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (under *Daubert*, "non-exclusive list of factors that courts might consider in gauging the reliability of scientific testimony" is "(1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error and whether standards and controls exist and have been maintained with respect to the technique; and (4) the general acceptance of the methodology in the scientific community.").

But Plaintiff's "methodology" argument is off the mark for more basic reasons. "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999). Consistent with that principle, expert testimony rooted in personal experience is routinely accepted in a wide range of subject areas, including, similar to Mr. van den Bout's testimony here, industry standards, regulations, and their application to issues in the case. *See, e.g., Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 537 (E.D.N.Y. 2012) (rejecting challenge to expert testimony "as to the content of banking industry standards and practices—and the [defendant] Bank's compliance with such standards and practices" from former head of global compliance at large bank); *id.* at 537 (no error in allowing Chairman of Palestinian Monetary Authority "to testify about Palestinian money-laundering regulations applicable to the Bank" because

6

testimony "is probative, but not dispositive, of the Bank's state of mind"); *Am. Home Assur. Co. v. Merck & Co.*, 462 F. Supp. 2d 435, 451 (S.D.N.Y. 2006) (denying *in limine* motion arguing that expert lacked "'reliable basis'" for opinions explaining certain FDA regulations based on many years of experience with relevant regulations as compliance officer); *Pension Committee of University of Montreal Pension Plan*, 716 F.Supp.2d at 227 (denying *in limine* motion to exclude expert testimony concerning industry standards of care for prime brokers of hedge funds, where witness had sufficient experience to support his opinions from his consulting business, and participation in industry conferences and informal conferences with industry participants).

In *Katt v. City of New York*, 151 F.Supp.2d 313 (S.D.N.Y. 2001), for example, Judge Lynch rejected an argument similar to Plaintiff's when he found no error in admitting a police expert's testimony on the subject of "organizational culture and practices of the NYPD," in particular the existence of a "code of silence" within the NYPD. *Id.* at 356, 358. The defendants argued that the expert's "conclusions regarding police culture were based on a 'flawed methodology' consisting largely of 'anecdotal material' such as interviews and conversations with NYPD police officers." *Id.* at 356. The court rejected the argument, explaining that just because "an expert's opinion is not based on statistical studies does not render that opinion inadmissible, provided that the testimony will assist the trier of fact to understand the evidence concerning matters outside common experience, and the testimony is based on reasoning or methodology generally accepted within a particular profession or discipline." *Id.* at 356 (internal quotation marks omitted).

Mr. van den Bout's declaration testimony more than meets these requirements. Mr. van den Bout states (at paragraph 4 of his moving declaration) that in his architecture practice, he spends a significant amount of time developing plans that will require permits and advises clients

on the likelihood that a permit will or will not be granted.  Indeed, a client would hardly hire an architect to design a project *without regard to* the project's likelihood of being approved by the permitting agencies.  Assessing the likelihood of regulatory approval is an integral part of developing an architectural plan for a project, and is "reasoning or methodology" that is part of the "profession" of architecture.[1]

Mr. van den Bout's testimony also meets the second requirement inasmuch as the matters addressed in his declarations are not within the common experience of the factfinder.  Mr. van den Bout's declaration testimony conveys specialized knowledge of the DOB and LPC permitting process, the practices of and criteria used by DOB, LPC, and DOT in evaluating permit applications, and application of these rules and practices to the ramps and lifts that have been suggested for the entrance to 597 Broadway.  These are not subjects within the common experience of a judge or jury.

Finally, Plaintiff's "sham" affidavit theory is nonsense.  At his deposition, Mr. van den Bout testified that, although every owner "wants a guarantee that they're going to get a permit," it would be "very foolish to guarantee" a result that is dependent on government employee assessments.  Tr. 119.  He then continued:

> I can -- I can give an opinion as to whether something is likely, and I'll gladly give that, you know, what I think the likelihood or how difficult it will be, and I -- in the course of what I do make -- know enough about the zoning ordinance and the code to shape a building that, from the best of my knowledge, complies and doesn't require variance . . . .

---

[1] *Ellsworth v. Tuttle*, 148 Fed. Appx. 653 (10th Cir. 2005), *see* Pl. Br. at 7, is nothing like this case.  The Tenth Circuit said that expert testimony as to the likelihood a permit being granted was too speculative, but did not explain what level of expertise the witnesses possessed or what the basis of his testimony was, leaving unclear why the court considered the testimony speculative.  *See id.* at 668.  Mr. van den Bout's qualifications, experience, and expertise make this case altogether different.  In addition, the Landlord's ramp was *in fact* rejected by the Buildings Department.

Tr. 119.  When asked whether "you ever provide percent chances to your clients as to whether or not their submission would be accepted," he answered:

> I try to avoid numbers. I say likely, heavy lift should be -- should be no problem, likely staff approval, likely, might, difficult, heavy lift, and I'll tell me them [sic] if I know it's impossible to get that through, I think it's going to be --you know, it's easier telling you cannot do something.

Tr. 120.  Thus, his summary judgment declarations stating that the structures at issue here are "unlikely" or "highly unlikely" to be approved by the permitting agencies, or have "virtually no chance" of being approved, are exactly in line with his deposition testimony.

## II.    PLAINTIFF HAS NOT PROVIDED ANY EVIDENCE TO CONTROVERT THE LANDLORD'S SHOWING THAT ITS RAMP IS NOT READILY ACHIEVABLE

### A.    Plaintiff's Preference For The Landlord's Ramp Design Cannot Defeat Summary Judgment

Point III of Plaintiff's brief argues that Mr. van den Bout's ramp design is readily achievable and advises that it is her "first choice" for the store entrance. Pl. Opp. Br. at 12.  In the face of DOB's principal objection to Mr. van den Bout's ramp—that it extends more than 44 inches beyond the storefront in violation of the Building Code—the thrust of her argument is that "all they need to do to cure" this objection "is to apply to DOT for a revocable consent." *Id.* at 13; *see also id.* at 14 (same).  Most of the argument is a rehash (if not a verbatim repetition) of points made in her summary judgment moving brief addressing the claimed cure-all of merely submitting a revocable consent application, the *Kreisler* case, the neighbor's revocable consent, and Mr. van den Bout's applications for revocable consents in two other cases. *See id.* at 13-16. The Landlord addressed these points in its opposition to Plaintiff's summary judgment motion, and Mr. van den Bout's Declaration in Opposition.  The Landlord incorporates those discussions by reference and will not repeat them here.

What remains is merely Plaintiff's expression of her preference.  Mr. van den Bout's ramp may be her "first choice," but she offers *no evidence* to controvert Mr. van den Bout's expert declarations laying out why his ramp design has virtually no chance of being approved by DOB, DOT, **and** LPC (since the approvals of all three agencies would be needed).  Plaintiff's wishes cannot defeat summary judgment, or turn an infeasible project into a plausible or readily achievable one.   Mr. van den Bout's opinions have a substantial basis, explain why the permitting problems with his ramp design are severe—this is not a grey area—and are not controverted by Plaintiff.  The Landlord's summary judgment motion should be granted.

### B.   The "Alteration" Standard Does Not Apply Because There Has Been No Alteration Of The Store Entrance

Plaintiff is wrong that the question whether the Landlord is violating the ADA in not installing a permanent ramp should be analyzed under the standard that applies to new construction and "alterations."  Pl. Opp. Br. at 11.

The statute and regulations are clear that where a pre-ADA building undergoes "alterations" within the meaning of the ADA, it is **the altered portion** of the building that must be made accessible.  The statute states that discrimination includes:

> with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure **to make alterations in such a manner** that, to the maximum extent feasible, **the altered portions of the facility** are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

42 U.S.C. § 12183(a)(2) (emphasis added).  As a result, the owner's obligation is to make the altered portions accessible:

> Any alteration to a place of public accommodation or a commercial facility, after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, **the altered portions**

> **of the facility** are readily accessible to and usable by individuals
> with disabilities, including individuals who use wheelchairs.

28 C.F.R. § 36.402(a); *see also Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 367 (2d Cir. 2008) (explaining these provisions).[2]

Accordingly, Plaintiff is wrong as a matter of law that the claimed alterations to the Party Wall on the interior of the Billabong store triggered any obligation by the Landlord to modify the entrance from the street into the store. Since Plaintiff makes no claim that the store entrance underwent alterations after January 26, 1992, nor could she, the "alterations" standard does not apply to the question whether the absence of a permanent ramp or lift, and the presence of a portable ramp, constitutes discrimination.

Finally, to correct the record we note that contrary to Plaintiff's repeated assertions, the Landlord has not "withdrawn its financial defense." Pl. Opp. Br. at 12. In support of this claim Plaintiff cites to the transcript of a court conference held on July 18, 2014 (Parker Declaration, Exhibit 9). But the "financial defense," at that juncture, related only to the ramp, as defense counsel's statement at the conference explained. *See* Parker Decl., Exh. 9, Tr. at 7-8 ("I have told them [plaintiff's counsel] our architect, who is experienced in landmarks issues and is an architect, has said a ramp is not feasible and would not be approved by the permitting agencies. So our defense is not that it's too expensive. We immediately set out to investigate whether a ramp could be done."). As Plaintiff's counsel informed the Court, the only claim in the case at that point was Plaintiff's demand for a ramp:

THE COURT: What are the claims that remain in the case?

---

[2] Plaintiff's counsel acknowledged this when he addressed the Court at the July 18, 2014 conference: "Now, on top of this, this is just one standard that they're raising, one defense, but there's also another issue here, which is under the ADA, **if there are any alterations done to this particular entrance**, since 1992, they were required to make those alterations accessible to the maximum extent feasible." Parker Decl., Exh. 9 at 5 (emphasis added).

11

> MR. PARKER: There's only one claim. It just concerns the installation of a permanent ramp at the entrance to the store, and so the claims are under the ADA as well as the corresponding state and City laws.

Parker Decl., Exh. 9, Tr. 2-3.[3]   Plaintiff did not raise her demand for a lift until after the conference, when she served her expert report on July 30, 2014.  Thus, it is accurate to say that the Landlord is not asserting a "financial defense" in connection with Plaintiff's demand for a ramp, but beyond that the Landlord has made no such statements.[4]

## C.   This Court Cannot Order The City Of New York To Approve The Landlord's Ramp

Plaintiff suggests that if all else fails, the Court could order New York City "to approve the installation of a ramp," Pl. Br. at 16, based on Title II of the ADA.  "Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of **a public entity**, or be subjected to discrimination by any such entity.'"  *United States v. Georgia*, 546 U.S. 151, 153-54 (2006) (quoting 42 U.S.C. § 12132) (emphasis added).  "The Act defines 'public entity' to include 'any State or local government' and 'any department, agency ... or other instrumentality of a State."  *Id.* (quoting 42 U.S.C. § 12131(1)).  Thus, if Plaintiff wishes to seek an injunction directing the City to approve Mr. van den Bout's ramp, she will have to sue

---

[3] Counsel's representation to the Court is consistent with the dismissal with prejudice the previous month of all of Plaintiff's claims relating to the interior of the store, *see* Wolstein (Moving) Decl. ¶ 8, and Exh. 4, and further supports the Landlord's argument that Plaintiff cannot have summary judgment on her claims relating to the interior "path of travel" when those claims have been dismissed with prejudice. *See* Def. Opp. Br. at 25-26.

[4] As to Plaintiff's argument that defense counsel is giving witness testimony concerning the Landlord's submission to LPC, *see* Pl. Opp. Br. at 8-9, the LPC submission is not material to Plaintiff's claims, and may be disregarded without any impact on the Landlord's summary judgment motion.  We provided the information to correct the misstatement of fact in Plaintiff's papers that the Landlord did not make an application to the LPC for Mr. van den Bout's ramp.

the City of New York, its departments and agencies.   She may not obtain relief against the

Landlord based on a theory about a government entity's obligations under Title II.

**III.     PLAINTIFF'S MENTION IN HER OPPOSITION BRIEF OF "OTHER PROPOSALS" CANNOT DEFEAT SUMMARY JUDGMENT**

      **A.     Plaintiff Offers No Admissible Expert Evidence And Thus Has Failed To Controvert The Landlord's Expert Declaration Testimony**

Plaintiff argues that her "two other" claimed proposals are readily achievable—a

wheelchair lift and her own version of a ramp proposal that she admits does not comply with the

ADA.  Pl. Opp. Br. at 17.  But the argument is completely unsupported by admissible evidence.

The Landlord's moving papers showed that neither Plaintiff's lift nor her ramp is readily

achievable.   With no evidence to controvert that showing, plaintiff cannot defeat summary

judgment.

"[O]nly admissible evidence need be considered by the trial court in ruling on a motion

for summary judgment."  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997); see also *ITC Ltd.*

*v. Punchgini, Inc.*, 482 F.3d 135, 151 (2d Cir. 2007) (inadmissible evidence "insufficient to

defeat summary judgment"); *Design X Mfg., Inc. v. ABF Freight Sys., Inc.*, 584 F. Supp. 2d 464,

468 (D. Conn. 2008). ("Of course, this statement is inadmissible hearsay and therefore cannot be

used to create a genuine issue of fact on a motion for summary judgment.").

In particular, an unsworn expert report is inadmissible and cannot defeat a properly

supported motion for summary judgment. *See, e.g. Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp.

2d 564, 570 (E.D.N.Y. 2013) ("Courts in this Circuit have uniformly held that unsworn expert

reports do not satisfy the admissibility requirements of Fed.R.Civ.P. 56(e) and cannot be used

[on] a summary judgment motion without additional affidavit support."), *aff'd in part, dismissed*

*in part*, 2014 WL 6911366 (2d Cir. Dec. 10, 2014); *Cornell Research Found., Inc. v. Hewlett-*

*Packard Co.*, No. 501-CV-1974 (NAM), 2007 WL 4349135, at *19 (N.D.N.Y. Jan. 31, 2007)

("far greater weight of authority" holds that unsworn expert reports "constitute inadmissible hearsay and thus are not worthy of consideration on motion for summary judgment"); *Brazier v. Hasbro, Inc.*, No. 99 Civ. 11258 (MBM), 2004 WL 1497607, at *2 (S.D.N.Y. July 6, 2004) (submission of unsworn letters from experts is "inappropriate response" to a summary judgment motion).

In spite of this, Plaintiff's opposition submission contains no expert declaration. Instead, she attaches her expert architect's unsworn "reply" report produced in discovery, which includes two drawings of a wheelchair lift. She does not submit *any* drawing of her ramp proposal that her brief argues is readily achievable. *See* Pl. Br. at 21.

### 1.    Plaintiff Offers No Admissible Evidence Relating To Her Lift

Under the well-settled authority cited above, Plaintiff's unsworn expert reply report addressing her lift proposal is inadmissible and cannot defeat summary judgment. Even if the lift drawings alone were severable and admissible on the grounds that they are attached to Mr. van den Bout's Moving Declaration, she provides no admissible expert testimony to (i) explain the drawings, (ii) opine that the lift is feasible from an engineering perspective, or (iii) opine that the lift drawings have any chance of being approved by DOB and LPC. If submission of a bare sketch of a lift were sufficient to raise an issue of fact, a plaintiff could submit a drawing by anyone, or a picture from the lift manufacturer's website for that matter, and claim it constitutes a prima facie case. That is far from the "plausible proposal" *Roberts* requires. *Roberts*, 542 F.3d at 373.

On this issue Plaintiff's citation of *Celeste v. East Meadow Union Free School Dist.*, 373 Fed. Appx. 85 (2d Cir. 2010), *see* Pl. Opp. Br. at 19, is completely inapt. There the plaintiff was proposing curb cuts and the replacement of installed "cleat cleaners" with portable ones already owned by the school. *See id.* at 88. But a ramp is of a completely different scope and

14

complexity, and its creation and an assessment of its feasibility requires expertise; curb cuts and moving cleat cleaners do not.

The Landlord's moving papers showed why the "conceptual" lift sketches attached to Plaintiff's expert reply report are neither a plausible proposal nor readily achievable, *see* Def. Mov. Br. at 23-26. Plaintiff's opposition offers nothing of an evidentiary nature in response that raises a triable issue. Even in her memorandum of law, her only factual contention concerning the lift is that the Landlord supposedly "does not contest" that her "lift proposal complies with the ADA," Pl. Opp. Br. at 21, but that is neither accurate nor remotely sufficient to controvert the Landlord's expert evidence showing the infeasibility of her "conceptual" lift sketch. *See* Van den Bout Mov. Decl. ¶¶ 30-33.

### 2. Plaintiff Offers No Evidence Concerning Her Ramp Proposal

As to her claimed ramp proposal, Plaintiff has not submitted *any* proposed ramp with either her own summary judgment motion or in opposition to the Landlord's motion. While her ramp drawings are part of the summary judgment record by virtue of Mr. van den Bout's discussion of them in his Moving Declaration, his opinion that the substantial non-compliance of these ramps with the ADA give them virtually no chance of being approved for construction is uncontroverted. Even Plaintiff's expert agreed that his ramp designs do not comply with ADA design standards and that a ramp is "does not seem feasible." *See* Def. Mov. Br. at 17, 19; Def. 56.1 Stmt. ¶ 45. Thus, Plaintiff offers nothing to create a triable issue. In contrast, the ramp in *Kreisler* was ADA-compliant. *See Kreisler v. Second Avenue Diner Corp.*, 2012 WL 3961304 at *3 (S.D.N.Y. Sept. 11, 2012) ("The sidewalk outside of the Diner along Second Avenue could accommodate a permanent ramp that complies with ADA standards.").

Plaintiff claims that a ramp with a "steeper slope" is sometimes allowed under the ADA, Pl. Br. at 21, but brushes aside the ADA's absolute ban on ramps steeper than 1:10 when the rise

is greater than 6 inches, as it is here. *See* Van den Bout Mov. Decl. ¶ 22, 23; Def. Mov. Br. at 17. Thus, a "steeper slope" than the 1:10 slope Mr. van den Bout designed here cannot be used.

And the multiple, substantial ADA violations that characterize Plaintiff's ramp are independent of the other problems with plaintiff's ramp that give it virtually no chance of approval by DOB or LPC. *See* Van den Bout Mov. Decl. ¶¶ 27-29 (discussing problems of extension of ramp onto neighboring property and destruction of 19th century storefront configuration); Def. Mov. Br. at 21.

Finally, Plaintiff's contention that the sidewalk vault covers at the entrances to some nearby stores support the feasibility of a "steeper slope" ramp for 597 Broadway is completely unsupported and cannot defeat summary judgment. Plaintiff's expert report in which these covers are discussed is inadmissible as explained above. For this reason alone, the claim cannot defeat the Landlord's fully supported motion.

Next, even if the photographs standing alone were admissible as non-hearsay (though they would still be unsworn), Plaintiff has offered no admissible expert testimony about them at all. As with the bare lift drawing, a simple photograph of other storefronts, coupled with inadmissible contentions in Plaintiff's brief that (i) these are ramps and (ii) these supposed ramps "have similar slopes" to her architect's proposed ramp that she has not offered in the summary judgment record, Pl. Opp. Br. at 21, cannot defeat summary judgment. *See, e.g.*, *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir. 1994) (contentions of fact in memorandum of law and at oral argument that lacked evidentiary support "are not evidence and cannot create issues of fact capable of defeating otherwise valid motion for summary judgment").

Moreover, the lawyer-contentions are wrong in every respect. As with the lift drawings, the only admissible expert evidence in the summary judgment record is that of the Landlord's expert, Mr. van den Bout. As explained in his accompanying Reply Declaration, the metal covers that appear in these photographs are not functionally, or for purposes of the Building Code, "ramps" as Plaintiff claims in her brief. Reply Declaration of Tom van den Bout ("Van den Bout Reply Decl.") ¶ 3. DOB does not consider every sloped surface in New York City to be a ramp; if it did most sidewalks and roofs would be considered ramps. *Id.* DOB does not consider these covers to be ramps and does not apply the rules for ramps to them. *Id.* If DOB considered these surfaces ramps, they would have to have handrails and other features that ramps are required to have under the Building Code. *Id.* They are known as sidewalk vaults or covers that are sloped in order to drain water. *Id.* ¶ 3.

More importantly, these sloped covers in front of other stores are irrelevant to the feasibility of a ramp for 597 Broadway. As Mr. van den Bout explains, the covers or vaults are not "appropriate examples of ADA compliant ramps and are not applicable to 597 Broadway." *Id.* ¶ 4. The layout at 597 Broadway demands a design that allows for 15-plus inches of grade change from sidewalk to store level. *Id.* Not including any required landings, an ADA compliant ramp could have a maximum slope of 1:10 (as explained in, among other places, paragraph 23 of Mr. van den Bout's moving declaration). It would therefore require a full 120 inches (10 feet) of ramp length. Additionally, explained elsewhere, the Building Code requires that any ramp with a rise over 6 inches have a handrail. None of the sidewalk vaults has a rise of over 4 inches, and therefore none provides an applicable precedent for an ADA-compliant ramp for the rise of more than 15 inches at 597 Broadway. *Id.*

The Landlord has previously addressed, in both of its prior briefs, Plaintiff's arguments in Point V of her opposition brief concerning the Administrative Code of the City of New York, and those arguments are incorporated by reference here. *See* Def. Mov. Br. at 27-28; Def. Brief in Opposition to Plaintiff's Summary Judgment Motion, at 21-22.

## CONCLUSION

For the reasons set forth above, in Defendant's moving brief, and in Defendant's brief in opposition to Plaintiff's motion for summary judgment, the Court should grant summary judgment for Defendant and dismiss the Complaint and this action in its entirety.

Dated: New York, New York
      January 9, 2015

Respectfully submitted,
**SCHLAM STONE & DOLAN LLP**

By:     s/ Elizabeth Wolstein
Richard H. Dolan
Elizabeth Wolstein
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-Mail: ewolstein@schlamstone.com

*Attorneys for Defendant*

18